

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY
OFFICE OF THE CLERK
M. L. KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-3730

CAMDEN OFFICE
ONE JOHN F. GERRY PLAZA
FOURTH & COOPER STREETS
CAMDEN, NJ 08101

TRENTON OFFICE
402 EAST STATE STREET
ROOM 2020
TRENTON, NJ 08608

REPLY TO: _

William T. Walsh
Clerk

April 16, 2008

Michael W. Dobbins, Clerk
United States District Court
Northern District of Illinois
219 South Dearborn Street
Chicago, Illinois   60604

Attention: Yvette Pearson, Deputy Clerk

**F I L E D**

MAY  1 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

   Re: U.S.A. -v- David Washington
   Our Docket No. 05-416-07
   Your Docket No. 08cr255

Dear Clerk:

   A Transfer of Jurisdiction Order (Prob 22 form) has been filed with this District in the above-captioned case.  This District considers the electronic record to be the original pursuant to Federal Rules of Criminal Procedure 49(d), Local Civil Rule 5.2 and paragraph 7 of the Court's Electronic Case Filing Policies and Procedures.  The original records of this Court can be obtained by accessing CM/ECF through PACER.  Certified copies of any document not available through PACER are enclosed .  Kindly acknowledge receipt on the duplicate of this letter, which is provided for your convenience.

               Sincerely,

               WILLIAM T. WALSH, Clerk

               By:

               Luz E. Castro, Deputy Clerk

**RECEIPT ACKNOWLEDGED BY:** _____
**DATE:** _____.

DNJ-Crim-003(Rev. 09/06)

## Instructions for Retrieving Electronic Case Files

1. Access the CM/ECF website for the District of New Jersey

2. Click on:    Link to Electronic Filing System (Live)

3. At the ECF/PACER Login Screen, enter your Court's PACER Login and Password

4. On the CM/ECF toolbar, choose:

- Reports
- Docket Sheet
- Enter Case Number in the following format: **[06-1234]**
- Run Report

  ▸ To view a document from the docket sheet, click on the blue "underlined" document number;

  ▸ To download, click on File, Save a Copy and save to your specific directory;

  ▸ If the document does not have an underlined document number, it is either:

    - A text only entry and no document is attached, or
    - An entry made prior to electronic case filing and the original is enclosed, or
    - The document included an attachment too large for the electronic case filing system and is enclosed.

If you have any questions, our ECF help-desk telephone numbers are as follows:

  ▸ Camden - 866-726-0726 or 856-757-5285
  ▸ Newark - 866-208-1405 or 973-645-5924
  ▸ Trenton - 866-848-6059 or 609-989-2004

# Transfer Documents
1:05-cr-00416-JBS USA v. PSALMS et al
CLOSED

### U.S. District Court

### District of New Jersey [LIVE]

## Notice of Electronic Filing

The following transaction was entered on 4/16/2008 at 2:51 PM EDT and filed on 4/16/2008

| | |
|---|---|
| **Case Name:** | USA v. PSALMS et al |
| **Case Number:** | 1:05-cr-416 |
| **Filer:** | |
| **Document Number:** | 269 |

**Docket Text:**
**Probation Jurisdiction Transferred to The Northern District of Illinois, Eastern Division as to DAVID WASHINGTON. Transmitted Transfer of Jurisdiction form, with instructions that original records of this Court can be obtained by assessing CM/ECF through PACER. (lc)**

**1:05-cr-416-7 Notice has been electronically mailed to:**

JEROME A. BALLAROTTO    jabesquire@aol.com

KEVIN P. BOLGER    bolgerlaw@aol.com

PATRICK J. EGAN    pegan@foxrothschild.com

MARTIN I. ISENBERG    lmi200@aol.com

RALPH A. JACOBS    rjacobs@rjesq.com, jacobsdocket@verizon.net

MICHAEL WILLIAM KAHN    mkahnesq@aol.com

ROBERT LUCENTI    rcl5700@hotmail.com

KEVIN P. MCMANIMON    kmcmanimon@mandslaw.com

HALLIE MITCHELL    hallie.mitchell@usdoj.gov, usanj.ecfcriminaldocketing@usdoj.gov

KC FILED

MAY 2 7 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| PROB 22 (Rev. 2/88) | DOCKET NUMBER *(Tran. Court)* 05-CR-00416-001 |
|---|---|
| **TRANSFER OF JURISDICTION** | DOCKET NUMBER *(Rec. Court)* |

| NAME AND ADDRESS OF PROBATIONER/SUPERVISED RELEASEE: David Washington | DISTRICT New Jersey | DIVISION |
|---|---|---|
| | NAME OF SENTENCING JUDGE Jerome B. Simandle | |
| | DATES OF PROBATION/ SUPERVISED RELEASE: | FROM 11/17/2006 | TO 11/16/2009 |

DOCKETED
MAR 2 8 2008

| OFFENSE Conspiracy to Distribute Narcotics | 08CR 255 |
|---|---|

### PART 1 - ORDER TRANSFERRING JURISDICTION

JUDGE JOHN HILDEN

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

        IT IS HEREBY ORDERED that pursuant to 18 U.S.C. 3605 the jurisdiction of the probationer or supervised releasee named above be transferred with the records of the Court to the United States District Court for the ED/PA upon that Court's order of acceptance of jurisdiction. This Court hereby expressly consents that the period of probation or supervised release may be changed by the District Court to which this transfer is made without further inquiry of this Court.*

February 20, 2008
_____
Date

*Jerome B. Simandle*
_____
United States District Judge

*This sentence may be deleted in the discretion of the transferring Court.

### PART 2 - ORDER ACCEPTING JURISDICTION

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

        IT IS HEREBY ORDERED that jurisdiction over the above-named probationer/supervised releasee be accepted and assumed by this Court from and after the entry of this order.

MAR 2 6 2008
_____
Effective Date

*James F. Holderman*
_____
United States District Judge



# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### 219 SOUTH DEARBORN STREET
### CHICAGO, ILLINOIS 60604

MICHAEL W. DOBBINS

312-435-5698

**April 1, 2008**

Mr. William T. Walsh
Clerk
United States District Court
4015 Martin Luther King, Jr. Federal
  Building and United States Courthouse
50 Walnut Street
Newark, NJ 07102

Dear Clerk:

**Re:**   **US v  David Washington**
Our case number:    -  **08 cr 255**

Dear Clerk:

Enclosed is a certified copy of the Probation Form 22, Transfer of Jurisdiction, regarding David Washington, which has been accepted and assumed by this Court in the Northern District of Illinois, Eastern Division.

Please forward a certified copy of the indictment/information, judgment and docket along with the enclosed copy of this letter to the United States District Court at the above address. Your prompt attention to this matter is greatly appreciated.

Sincerely,

Michael W. Dobbins
Clerk

by:
Yvette Pearson , Deputy Clerk

Enclosure

CLOSED

# U.S. District Court
## District of New Jersey [LIVE] (Camden)
## CRIMINAL DOCKET FOR CASE #: 1:05-cr-00416-JBS-7

Case title: USA v. PSALMS et al

Date Filed: 05/24/2005
Date Terminated: 11/17/2006

Assigned to: Judge Jerome B. Simandle

**Defendant (7)**
**DAVID WASHINGTON**
*TERMINATED: 11/17/2006*

represented by **PATRICK J. EGAN**
FOX ROTHSCHILD, LLP
2000 MARKET STREET
10TH FLOOR
PHILADELPHIA, PA 19103
(215) 299-2825
Email: pegan@foxrothschild.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Designation: Retained

**Pending Counts**

21USC, Section 846 CONSPIRACY
TO DISTRIBUTE NARCOTICS (DOF
8/03 - 10/10/03)
(53)

**Disposition**

PROBATION for a term of 3 years.
FINE of $10,000.00. SPECIAL
ASSESSMENT of $100.00

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**

21USC,Sections 841(a)(1)and (b)(1)(C)
and Title 18, United States Code,
Section 2 POSSESS WITH INTENT
TO DISTRIBUTE NARCOTICS (DOF
10/10/03)
(54)

**Disposition**

DISMISSED

## Highest Offense Level (Terminated)

Felony

## Complaints

None

## Disposition

---

## Plaintiff

**USA**

represented by **HALLIE MITCHELL**
OFFICE OF THE US ATTORNEY
970 BROAD STREET
SUITE 700
NEWARK, NJ 07101
(973) 645-2700
Email: hallie.mitchell@usdoj.gov
*ATTORNEY TO BE NOTICED*

**STEPHEN J. TAYLOR**
UNITED STATES ATTORNEY'S
OFFICE
970 BROAD STREET
ROOM 702
NEWARK, NJ 07102
(973) 645-2824
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/24/2005 | 1 | SEALED INDICTMENT as to HAROLD PSALMS (1) count(s) 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, MOHAMED ABDELMEGID AREF (2) count(s) 1, 2, 6, 8, 10, 11, 12, 14, 15, 20, 22, 24, 25, 26, 28, 29, 34, 36, 38, 39, 40, 42, 43, 45, 51, 52, RONALD X. FORD, JR (3) count(s) 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, MUSTAPHA KECHTBAN (4) count(s) 1, 2, 6, 8, 20, 22, 34, 36, STEVE C. TAKLA (5) count(s) 2, 6, 20, 34, EDWARD GENE SAAD (6) count(s) 2, 6, 20, 34, DAVID WASHINGTON (7) count(s) 53, 54, LESTER V. EDDINGS (8) count(s) 53, 54, FREDRICK LYDELL STEVENSON (9) count(s) 53, 54, GIOVANNI L. DERISI (10) count(s) 55, 56, 57, ANDREA V. CODISPOTI (11) count(s) 55, 56, 57, LLOYD J. THAMES (12) count(s) 2, 9, 23, 37, NARESH JOITAREM PATEL (13) count(s) 2, 9, 23, 37, AJAYKUMAR RATILAL JOSHI (14) count(s) 2, 10, 24, 38, WALID M. HASAN (15) count(s) |

|  |  |  |
|---|---|---|
|  |  | 2, 13, 27, 41, PETER Y. NORFLEET, III (16) count(s) 2, 16, 30, 44. (Attachments: # 1 CONTINUATION OF INDICTMENT# 2 CONTINUATION OF INDICTMENT# 3 CONTINUATION OF INDICTMENT# 4 CONTINUATION OF INDICTMENT) (lc, ) (Entered: 05/25/2005) |
| 05/24/2005 |  | ARREST Warrant Issued in case as to HAROLD PSALMS, MOHAMED ABDELMEGID AREF, RONALD X. FORD, JR, MUSTAPHA KECHTBAN, STEVE C. TAKLA, EDWARD GENE SAAD, DAVID WASHINGTON, LESTER V. EDDINGS, FREDRICK LYDELL STEVENSON, GIOVANNI L. DERISI, ANDREA V. CODISPOTI, LLOYD J. THAMES, NARESH JOITAREM PATEL, AJAYKUMAR RATILAL JOSHI, WALID M. HASAN, PETER Y. NORFLEET, III. (lc, ) (Entered: 05/25/2005) |
| 05/25/2005 | 2 | ORDER SEALING INDICTMENT as to HAROLD PSALMS, MOHAMED ABDELMEGID AREF, RONALD X. FORD, JR, MUSTAPHA KECHTBAN, STEVE C. TAKLA, EDWARD GENE SAAD, DAVID WASHINGTON, LESTER V. EDDINGS, FREDRICK LYDELL STEVENSON, GIOVANNI L. DERISI, ANDREA V. CODISPOTI, LLOYD J. THAMES, NARESH JOITAREM PATEL, AJAYKUMAR RATILAL JOSHI, WALID M. HASAN, PETER Y. NORFLEET, III . Signed by Judge Ann Marie Donio on 5/24/05. (lc, ) (Entered: 05/25/2005) |
| 05/25/2005 |  | Notice of Allocation and Assignment to Hon. Jerome B. Simandle as to HAROLD PSALMS, MOHAMED ABDELMEGID AREF, RONALD X. FORD, JR, MUSTAPHA KECHTBAN, STEVE C. TAKLA, EDWARD GENE SAAD, DAVID WASHINGTON, LESTER V. EDDINGS, FREDRICK LYDELL STEVENSON, GIOVANNI L. DERISI, ANDREA V. CODISPOTI, LLOYD J. THAMES, NARESH JOITAREM PATEL, AJAYKUMAR RATILAL JOSHI, WALID M. HASAN, PETER Y. NORFLEET, III (lc, ) (Entered: 05/25/2005) |
| 08/21/2005 | 15 | Order Unsealing Case as to HAROLD PSALMS, RONALD X. FORD, JR, MUSTAPHA KECHTBAN, STEVE C. TAKLA, EDWARD GENE SAAD, DAVID WASHINGTON, LESTER V. EDDINGS, FREDRICK LYDELL STEVENSON, GIOVANNI L. DERISI, ANDREA V. CODISPOTI, LLOYD J. THAMES, NARESH JOITAREM PATEL, AJAYKUMAR RATILAL JOSHI, WALID M. HASAN, PETER Y. NORFLEET, III. . Signed by Judge Joel B. Rosen on 8/21/05. (lc, ) (Entered: 08/23/2005) |
| 08/21/2005 |  | Arrest of MOHAMED ABDELMEGID AREF, STEVE C. TAKLA, EDWARD GENE SAAD, DAVID WASHINGTON, LESTER V. EDDINGS, LLOYD J. THAMES, NARESH JOITAREM PATEL, AJAYKUMAR RATILAL JOSHI, PETER Y. NORFLEET, III in Northern District of Illinois, Eastern Division case #05cr733. (th, ) (Entered: 08/30/2005) |
| 08/29/2005 | 32 | Rule 5 Documents Received as to MOHAMED ABDELMEGID AREF, STEVE C. TAKLA, EDWARD GENE SAAD, DAVID WASHINGTON, LESTER V. EDDINGS, LLOYD J. THAMES, NARESH JOITAREM PATEL, AJAYKUMAR RATILAL JOSHI, PETER Y. NORFLEET, III (Attachments: # |

| | | |
|---|---|---|
| | | 1 Mohamed Abdelmegid Aref's Rule 5 Paperwork# 2 Steve C. Takla's Rule 5 Paperwork# 3 Edward Gene Saad's Rule 5 Paperwork# 4 David Washington's Rule 5 Paperwork# 5 Lester V. Eddings' Rule 5 Paperwork# 6 Lloyd J. Thames' Rule 5 Paperwork# 7 Naresh Joitarem Patel's Rule 5 Paperwork# 8 Ajaykumar Ratilal Joshi's Rule 5 Paperwork# 9 Peter Y. Norfleet III's Rule 5 Paperwork) (th, ) (Entered: 08/30/2005) |
| 08/31/2005 | 33 | MOTION for Speedy Trial by USA as to HAROLD PSALMS, MOHAMED ABDELMEGID AREF, RONALD X. FORD, JR, MUSTAPHA KECHTBAN, STEVE C. TAKLA, EDWARD GENE SAAD, DAVID WASHINGTON, LESTER V. EDDINGS, FREDRICK LYDELL STEVENSON, GIOVANNI L. DERISI, ANDREA V. CODISPOTI, LLOYD J. THAMES, NARESH JOITAREM PATEL, AJAYKUMAR RATILAL JOSHI, WALID M. HASAN, PETER Y. NORFLEET, III. (Attachments: # 1)(MITCHELL, HALLIE) (Entered: 08/31/2005) |
| 09/08/2005 | 34 | NOTICE OF ATTORNEY APPEARANCE: JONATHAN L. SWICHAR, ESQ. appearing for DAVID WASHINGTON for purposes of today only. MICHAEL MONICO, of Monico, Pavich & Spavack will be representing Mr. Washington in this Matter. (lc, ) (Entered: 09/10/2005) |
| 09/09/2005 | 45 | Minute Entry for proceedings held before Judge Joel B. Rosen :Arraignment as to DAVID WASHINGTON (7) Count 53,54 held on 9/9/2005, Plea entered by DAVID WASHINGTON (7) Count 53,54. by DAVID WASHINGTON Not Guilty on counts 53,54. Ordered all motions to be filed by 10/10/05, Ordered all responses due by 10/24/05, Ordered all motions returnable 11/4/05 at 9:30 a.m. Jury Trial set for 10/31/2005 09:30 AM before Judge Jerome B. Simandle. Ordered deft. remanded to custody of U.S. Marshal. No obj. to complex case designation.(Tape #Disk #9.) (lc, ) (Entered: 09/11/2005) |
| 09/09/2005 | 51 | ORDER for Discovery and Inspection as to HAROLD PSALMS, MOHAMED ABDELMEGID AREF, RONALD X. FORD, JR, MUSTAPHA KECHTBAN, STEVE C. TAKLA, EDWARD GENE SAAD, DAVID WASHINGTON, LESTER V. EDDINGS, FREDRICK LYDELL STEVENSON, GIOVANNI L. DERISI, ANDREA V. CODISPOTI, LLOYD J. THAMES, NARESH JOITAREM PATEL, AJAYKUMAR RATILAL JOSHI, WALID M. HASAN, PETER Y. NORFLEET, III . Signed by Judge Joel B. Rosen on 9/9/05. (lc, ) (Entered: 09/13/2005) |
| 09/16/2005 | 56 | NOTICE OF ATTORNEY APPEARANCE: PATRICK J. EGAN appearing for DAVID WASHINGTON (lc, ) (Entered: 09/16/2005) |
| 09/16/2005 | 57 | CONSENT ORDER modifying conditions of Pre-trial release as to DAVID WASHINGTON . Signed by Judge Joel B. Rosen on 9/16/05. (lc, ) (Entered: 09/16/2005) |
| 09/21/2005 | 59 | CONSENT ORDER MODIFYING CONDITIONS OF PRE-TRIAL RELEASE, allowing deft DAVID WASHINGTON to travel to Wisconsin on September 22 and 23, 2005 for business purposes etc. . Signed by Judge Joel B. Rosen on |

| | | |
|---|---|---|
| | | 9/21/05. (lc, ) (Entered: 09/21/2005) |
| 09/26/2005 | 68 | ORDER TO CONTINUE - Ends of Justice as to HAROLD PSALMS, MOHAMED ABDELMEGID AREF, RONALD X. FORD, JR, MUSTAPHA KECHTBAN, STEVE C. TAKLA, EDWARD GENE SAAD, DAVID WASHINGTON, LESTER V. EDDINGS, FREDRICK LYDELL STEVENSON, GIOVANNI L. DERISI, ANDREA V. CODISPOTI, LLOYD J. THAMES, NARESH JOITAREM PATEL, AJAYKUMAR RATILAL JOSHI, WALID M. HASAN, PETER Y. NORFLEET, III Time excluded from 9/9/05 until 2/17/06. ORDERED THAT THIS MATTER IS HEREBY DESIGNATED A COMPLEX CASE ETC.. Signed by Judge Joel B. Rosen on 9/26/05. (lc, ) (Entered: 10/04/2005) |
| 12/16/2005 | | CLERK'S OFFICE QUALITY CONTROL MESSAGE. Documents #85 & 86 submitted on 12/15/05 by A. Simonetti appear to be duplicate documents however #86 is a corrected #85. PLEASE BE ADVISED, PROPOSED ORDERS (not filed as attachments) MUST BE EXECUTED BY A JUDICIAL OFFICER BEFORE FILING. Please Do Not use the CM/ECF system to submit proposed documents, instead forward to the appropriate Judicial Officer in accordance with his/her preferred practice. The Judicial Preference list can be found on the Court's Home Page. (th) (Entered: 12/16/2005) |
| 01/10/2006 | 97 | Consent MOTION to Modify Conditions of Release *ORDER* by DAVID WASHINGTON. (EGAN, PATRICK) (Entered: 01/10/2006) |
| 01/11/2006 | | CLERK'S OFFICE QUALITY CONTROL MESSAGE: The Consent order modifying conditions of Pre-trial Release submitted by P. EGAN, Esq. on 1/10/06 as document # 97 was submitted incorrectly as Notice of Motion and did not contain proper electronic (s/) signatures. PLEASE BE ADVISED THAT ORDERS TO BE SIGNED BY A JUDGE SHOULD NOT BE ELECTRONICALLY FILED. SUBMIT CONSENT ORDER DIRECTLY TO CHAMBERS. This submission will remain on the docket unless otherwise ordered by the Court. (lc, ) (Entered: 01/11/2006) |
| 01/17/2006 | 105 | CONSENT ORDER MODIFYING CONDITIONS OF PRE-TRIAL RELEASE PERMITTING DEFT. DAVID WASHINGTON TO TRAVEL WITHIN THE CONTINENTAL UNITED STATES UPON APPROVAL FROM PRE-TRIAL SERVICES. Signed by Judge Joel B. Rosen on 1/17/06. (lc, ) (Entered: 01/18/2006) |
| 01/30/2006 | 108 | ORDER TO CONTINUE - Ends of Justice as to HAROLD PSALMS, MOHAMED ABDELMEGID AREF, RONALD X. FORD, JR, MUSTAPHA KECHTBAN, STEVE C. TAKLA, EDWARD GENE SAAD, DAVID WASHINGTON, LESTER V. EDDINGS, FREDRICK LYDELL STEVENSON, GIOVANNI L. DERISI, ANDREA V. CODISPOTI, LLOYD J. THAMES, NARESH JOITAREM PATEL, AJAYKUMAR RATILAL JOSHI, WALID M. HASAN, PETER Y. NORFLEET, III, J. BARTON KALISH Time excluded from 1/27/06 until 4/13/06 . Signed by Judge Jerome B. Simandle on 1/30/06. |

| | | (lc, ) (Entered: 02/03/2006) |
|---|---|---|
| 02/17/2006 | 109 | Minute Entry for proceedings held before Judge Jerome B. Simandle :Retraction of Plea Hearing as to DAVID WASHINGTON held on 2/17/2006, Plea entered by DAVID WASHINGTON (7) Guilty Count 53. Sentencing set for 6/2/2006 10:30 AM before Judge Jerome B. Simandle. Ordered bail continued.(Court Reporter Lisa Marcus.) (th, ) (Entered: 02/21/2006) |
| 02/17/2006 | 110 | APPLICATION for permission to enter Plea of guilty by David Washington. (th, ) (Entered: 02/21/2006) |
| 02/17/2006 | 111 | PLEA AGREEMENT as to DAVID WASHINGTON (th, ) (Entered: 02/21/2006) |
| 04/17/2006 | 131 | ORDER TO CONTINUE - Ends of Justice as to HAROLD PSALMS, MOHAMED ABDELMEGID AREF, RONALD X. FORD, JR, MUSTAPHA KECHTBAN, STEVE C. TAKLA, EDWARD GENE SAAD, DAVID WASHINGTON, LESTER V. EDDINGS, FREDRICK LYDELL STEVENSON, GIOVANNI L. DERISI, ANDREA V. CODISPOTI, LLOYD J. THAMES, NARESH JOITAREM PATEL, AJAYKUMAR RATILAL JOSHI, WALID M. HASAN, PETER Y. NORFLEET, III, J. BARTON KALISH Time excluded from 4/13/06 until 6/13/06. Signed by Judge Jerome B. Simandle on 4/17/06. (ar1, ) (Entered: 04/19/2006) |
| 04/19/2006 | 132 | NOTICE OF TRIAL SET ON JUNE 19, 2006 AT 9:00 before Judge Simandle as to HAROLD PSALMS, MOHAMED ABDELMEGID AREF, RONALD X. FORD, JR, MUSTAPHA KECHTBAN, STEVE C. TAKLA, EDWARD GENE SAAD, DAVID WASHINGTON, LESTER V. EDDINGS, FREDRICK LYDELL STEVENSON, GIOVANNI L. DERISI, ANDREA V. CODISPOTI, LLOYD J. THAMES, NARESH JOITAREM PATEL, AJAYKUMAR RATILAL JOSHI, WALID M. HASAN, PETER Y. NORFLEET, III, J. BARTON KALISH (mb, ) (Entered: 04/19/2006) |
| 05/01/2006 | 137 | Consent MOTION to Travel *Abroad* by DAVID WASHINGTON. (EGAN, PATRICK) (Entered: 05/01/2006) |
| 05/03/2006 | 138 | CONSENT ORDER FOR LEAVE TO TRAVEL ABROAD ON BUSINESS as to DAVID WASHINGTON . Signed by Judge Jerome B. Simandle on 5/3/06. (lc, ) (Entered: 05/04/2006) |
| 10/10/2006 | 201 | Consent MOTION to Modify Conditions of Release *to Obtain Passport* by DAVID WASHINGTON. (EGAN, PATRICK) (Entered: 10/10/2006) |
| 10/11/2006 | 202 | ORDER granting 201 Motion to Modify Conditions of Release to obtain passport as to DAVID WASHINGTON etc.. Signed by Judge Jerome B. Simandle on 10/11/06. (lc, ) (Entered: 10/11/2006) |
| 11/17/2006 | | CLERK'S OFFICE QUALITY CONTROL MESSAGE as to DAVID WASHINGTON: Document # 203, the Sentencing Memorandum submitted by P. EGGAN, is NOT a FILED document. Access to this document has been |

| | | |
|---|---|---|
| | | restricted. In the future please submit this document directly to Judge's Chambers. (lc, ) (Entered: 11/17/2006) |
| 11/17/2006 | 204 | Minute Entry for proceedings held before Judge Jerome B. Simandle : Hearing on motion for downward departure. Ordered motion GRANTED. OSentencing held on 11/17/2006 for DAVID WASHINGTON (7), Count(s) 53, PROBATION for a term of 3 years. FINE of $10,000.00. SPECIAL ASSESSMENT of $100.00. Hearing on appl. by govt. to dismiss Count 54 of the indictment. Ordered application GRANTED. Order to be entered. (Court Reporter LISA MARCUS.) (lc, ) (Entered: 11/20/2006) |
| 11/17/2006 | 205 | JUDGMENT as to DAVID WASHINGTON (7), Count(s) 53, PROBATION for a term of 3 years. FINE of $10,000.00. SPECIAL ASSESSMENT of $100.00; Count(s) 54, DISMISSED . Signed by Judge Jerome B. Simandle on 11/17/06. (lc, ) (Entered: 11/20/2006) |
| 04/16/2008 | 269 | Probation Jurisdiction Transferred to The Northern District of Illinois, Eastern Division as to DAVID WASHINGTON. Transmitted Transfer of Jurisdiction form, with instructions that original records of this Court can be obtained by assessing CM/ECF through PACER. (lc) (Entered: 04/16/2008) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/02/2008 12:01:35 | | |
| **PACER Login:** | us3962 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:05-cr-00416-JBS Start date: 1/1/1970 End date: 5/2/2008 |
| **Billable Pages:** | 4 | **Cost:** | 0.32 |

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 05- 4/6 - J.B.S. |
| | | |
| v. | : | HON. Jerome B. Simandle |
| | | |
| D-1   HAROLD PSALMS, | : | |
|         a/k/a "Harold Washington," | | |
|         a/k/a "Hal," | : | |
| D-2   MOHAMED ABDELMEGID AREF, | | 18 U.S.C. § 1962(d) |
| D-3   RONALD X. FORD, JR., | : | 18 U.S.C. § 371 |
| D-4   MUSTAPHA C. KECHTBAN, | | 18 U.S.C. § 545 |
| D-5   STEVE C. TAKLA, | : | 18 U.S.C. § 1956 |
| D-6   EDWARD GENE SAAD, | | 18 U.S.C. § 2320 |
|         a/k/a "Ed," | : | 18 U.S.C. § 2342 |
| D-7   DAVID WASHINGTON, | | 18 U.S.C. § 2 |
| D-8   LESTER V. EDDINGS, | : | 18 U.S.C. § 982 |
| D-9   FREDRICK LYDELL STEVENSON, | | 18 U.S.C. § 1963 |
|         a/k/a "Fred Johnson," | : | 21 U.S.C. § 841 |
| D-10  GIOVANNI L. DERISI, | | 21 U.S.C. § 846 |
|         a/k/a "John," | : | 21 U.S.C. § 853 |
| D-11  ANDREA V. CODISPOTI, | | |
| D-12  LLOYD J. THAMES, | : | |
| D-13  NARESH JOITAREM PATEL, | | |
|         a/k/a "Nicky," | : | |
| D-14  AJAYKUMAR RATILAL JOSHI, | | |
|         a/k/a "Ajay" | : | |
| D-15  WALID M. HASAN | | |
| and | : | |
| D-16  PETER Y. NORFLEET III | | |
| | : | |
|         Defendants | | |
| | : | |

## INDICTMENT

THE GRAND JURY IN AND FOR THE DISTRICT OF NEW JERSEY,

SITTING AT CAMDEN, CHARGES:

### INTRODUCTION

1.      At all relevant times, a "Trademark," as defined in Title 15, United States Code,

Section 1127, is any word, name, symbol or device or any combination thereof, used by a person

to distinguish his or her goods, including a unique product, from that manufactured or sold by

others and to indicate the source of the goods.  The term "Mark" includes any trademark.

2.      At all relevant times, a "Registered Trademark," as defined in Title 15, United

States Code, Section 1127, is a trademark registered in the United States Patent and Trademark

Office according to law.

3.      At all relevant times, and for purposes of this indictment, a "Counterfeit Mark," as

defined in Title 18, United States Code, Section 2320 (e)(1)(A), is a spurious mark that is used in

connection with trafficking in goods and services which is identical with, or substantially

indistinguishable from, a mark registered for those goods on the principal register for the United

States Patent and Trademark Office and in use, and the use of which is likely to cause confusion,

to cause mistake, or to deceive a purchaser of the counterfeit goods.

4.      At all relevant times, and for purposes of this indictment, the term "Counterfeit

Cigarettes" refers to cigarettes bearing counterfeit marks and trademarks.

5.      The brand name cigarettes "Marlboro" and  "Marlboro Lights" are cigarettes

manufactured in the United States by Phillip Morris USA.  At all relevant times, the brand names

2

"Marlboro" and "Marlboro Lights" were registered trademarks of Phillip Morris USA.

6.    The brand name cigarettes "Newport" and "Newport 100's" are cigarettes manufactured in Greensboro, North Carolina by the Lorillard Tobacco Company.   At all relevant times, the brand names "Newport" and "Newport 100's" were Registered Trademarks of the Lorillard Licensing Company, LLC and the trademarks and the right to enforce the trademarks have been assigned to the Lorillard Tobacco Company.

7.    "Contraband Cigarettes" is a statutorily defined term which means a quantity in excess of 60,000 cigarettes (generally seven cases of cigarettes) which bear no evidence of the payment of applicable state cigarette taxes in the state where such cigarettes are found, if such state requires a stamp, impression or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes.  18 U.S.C. § 2341(2).

8.    States have the concurrent authority and jurisdiction to enact and enforce cigarette tax laws, to provide for the confiscation of cigarettes and other property seized for violations of such laws, and for the administration of such laws, including the imposition of cigarette tax rates. For example, from July 2003 through September 2004, the state cigarette tax on cigarettes sold in New Jersey was $2.05 per package or $20.50 per carton.  Since August 2002, the state cigarette tax on cigarettes sold in Illinois was $0.98 per package or $9.80 per carton.  Since August 2004, Cook County, Illinois charged an additional $1.55 per package or $15.50 per carton on cigarettes sold in Cook County.

9.    Most states, in order to evidence the payment of applicable state cigarette taxes in the state where such cigarettes are found, require a stamp, impression, or other indication to be placed on packages or other containers of cigarettes.

3

10.    At all relevant times, the states discussed in this Indictment whose cigarette taxes were not paid, namely, New Jersey, Illinois and Pennsylvania, imposed a state tax on cigarettes and required a state cigarette tax stamp to be placed on packages of cigarette.

11.    A "Duty" refers to, among other things, a tax on imported merchandise.

12.    "Bill of Lading" refers to a document that a transportation company possesses, acknowledging that it has received goods, which temporarily serves as the title during the transport of the merchandise.

13.    "Customs Broker" refers to the importer's agent, licensed by the Bureau of Customs and Border Protection ("Customs"), to enter and clear goods through Customs.

14.    As used in this indictment, the term "Container" is a reference to a large metal box approximately 40 feet in length used to transport bulk cargo on board ships as well as on tractor-trailer trucks. A container is capable of transporting a maximum of approximately 1,100 cases of cigarettes.

15.    As used in this indictment, the term "Case" of cigarettes generally describes a box which contains fifty (50) cartons of contraband cigarettes; the term "Carton" of cigarettes describes a carton which contains ten (10) packages of cigarettes; the term "Package" of cigarettes describes a package which contains twenty (20) individual cigarettes. Therefore, one case of contraband cigarettes typically contains 10,000 individual cigarettes. In some instances, a case of contraband cigarettes may contain sixty (60) cartons of cigarettes or 12,000 individual cigarettes. Legitimate cases of cigarettes contain sixty (60) cartons.

16.    "Phillies Blunt" cigars are a brand of cigar manufactured by Altadis U.S.A., Inc. in the United States.

17.    "Red Bull" is an non-alcoholic energy drink imported into the United States from Austria and is advertised as deterring mental or physical weariness or exhaustion.

## COUNT ONE

### ( Conspiracy to Violate the Racketeer Influenced and Corrupt Organizations Act (RICO) )

D-1    **HAROLD PSALMS,**
    a/k/a "Harold Washington,"
    a/k/a "Hal,"

D-2    **MOHAMED ABDELMEGID AREF,**

D-3    **RONALD X. FORD, JR.**
    **and**

D-4    **MUSTAPHA C. KECHTBAN**

### THE ENTERPRISE

1.    The allegations set forth in the Introduction of this Indictment are hereby repeated and incorporated herein by reference.

2.    From approximately in or about November 2002, through the date of this Indictment, in the District of New Jersey, the Northern District of Illinois, the Eastern District of Pennsylvania and elsewhere, defendants HAROLD PSALMS, a/k/a "Harold Washington," a/k/a "Hal," MOHAMED ABDELMEGID AREF, RONALD X. FORD, JR. and MUSTAPHA C. KECHTBAN, contraband and counterfeit cigarette suppliers both known and unknown to the Grand Jury, contraband and counterfeit cigarette purchasers both known and unknown to the Grand Jury and others both known and unknown to the Grand Jury, were members and associates of the "Psalms Enterprise," a criminal organization whose members and associates engaged in diverse criminal activities including, but not limited to, trafficking in goods bearing counterfeit marks, trafficking in contraband cigarettes, distribution of 3,4-methylenedioxymethamphetamine

6

("MDMA" or "ecstasy") and money laundering, and which operated in the District of New Jersey and the States of Illinois and Pennsylvania and points in between, and the country of Canada and elsewhere.

3.      The Psalms Enterprise, including its leadership, membership and associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact.  The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.  The criminal enterprise was bound together by a common geography (Chicago, Illinois area), and a common purpose of generating large sums of cash through the conduct of the above listed criminal activities.  This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

## Purposes of the Enterprise

4.      The purposes of the enterprise included the following:

A.      Enriching the members and associates of the Psalms Enterprise through, among other things, trafficking in goods bearing counterfeit marks, trafficking in contraband cigarettes, distributing narcotics and money laundering.

B.  Promoting and enhancing the Psalms Enterprise and its members' and associates' activities.

## Roles of the Defendants

5.      The defendants participated in the operation and management of the Psalms Enterprise.  The Psalms Enterprise was structured in the following manner, and the defendants

7

and other persons employed by and associated with the enterprise functioned in the following roles:

A.   HAROLD PSALMS, was a high level distributor and leader of a multimillion dollar a year counterfeit and contraband cigarette trafficking organization that operated from at least as early as in or about November 2002 through the date of this Indictment. The Psalms Enterprise received quantities of counterfeit cigarettes from co-conspirators not named as defendants herein. The counterfeit cigarettes, including counterfeit Marlboro and Newport brand cigarettes, were produced at factories in China by unknown cigarette manufacturers, not named as defendants herein, who were part of another criminal enterprise (hereafter "First Enterprise") that illegally imported the counterfeit cigarettes into the United States. The cigarettes were shipped through Port Newark, New Jersey in shipping containers utilizing bills of lading, invoices and packing lists which falsely listed the contents as either wicker, bamboo or rattan products or plastic toys. Each shipment contained approximately 800-1,100 cases of counterfeit cigarettes, which equates to approximately 8-11 million cigarettes per shipment. Undercover federal law enforcement special agents believed to be members of a separate criminal organization (hereinafter "undercover agents") assisted in smuggling the containers into Port Newark and storing the counterfeit cigarettes prior to delivery. The undercover agents also delivered the cigarettes, at the direction of members of the First Enterprise, to buyers in the United States and Canada, including members of the Psalms Enterprise. HAROLD PSALMS negotiated with the importers of the

8

counterfeit and contraband cigarettes, distributed the cigarettes in Illinois, Minnesota and elsewhere and directed the actions of other members of the Psalms Enterprise, including MOHAMED ABDELMEGID AREF, RONALD X. FORD, JR., MUSTAPHA C. KECHTBAN and others involved in the financing, transportation, delivery, storage and distribution of counterfeit and contraband cigarettes, including Steve C. Takla, Edward Gene Saad, David Washington, Lester V. Eddings, Fredrick Lydell Stevenson, Giovanni L. Derisi, Andrea V. Codispoti, Lloyd J. Thames, Naresh Joitarem Patel, Ajaykumar Ratilal Joshi, Walid M. Hasan and Peter Y. Norfleet III, co-defendants not charged in Count One.

B. MOHAMED ABDELMEGID AREF and MUSTAPHA C. KECHTBAN, defendants herein, were members of the Psalms Enterprise who, with HAROLD PSALMS, financed the purchase of counterfeit and contraband cigarettes. MOHAMED ABDELMEGID AREF and MUSTAPHA C. KECHTBAN also received deliveries of counterfeit and contraband cigarettes from undercover agents, assisted in unloading delivery trucks and attended meetings with undercover agents. MOHAMED ABDELMEGID AREF, along with HAROLD PSALMS, also laundered money believed to be proceeds from narcotics trafficking for the undercover agents through various bank accounts and companies.

C. The Psalms Enterprise also utilized truck drivers, including RONALD X. FORD, JR., Peter Y. Norfleet III and others to transport the counterfeit and contraband cigarettes from an undercover warehouse in New Jersey to locations in Illinois and Pennsylvania, where other members of the Psalms Enterprise, including

9

HAROLD PSALMS, MOHAMED ABDELMEGID AREF, MUSTAPHA C. KECHTBAN, Steve C. Takla, Edward Gene Saad, Lloyd J. Thames, Ajaykumar Ratilal Joshi and Walid M. Hasan, took possession of the cigarettes for further distribution. Among other places, RONALD X. FORD, JR. delivered cigarettes to warehouses under the control of HAROLD PSALMS and MUSTAPHA C. KECHTBAN in the area of Franklin Park, Illinois. RONALD X. FORD, JR. also delivered monetary payments from HAROLD PSALMS to undercover agents for their transportation and storage services.

D.  The sale and distribution of counterfeit and contraband cigarettes by the Psalms Enterprise generated large amounts of currency. Some of the proceeds of the Psalms Enterprise were laundered by HAROLD PSALMS and MOHAMED ABDELMEGID AREF through bank accounts and companies controlled by HAROLD PSALMS and MOHAMED ABDELMEGID AREF to conceal and disguise the nature, location, origin and source of the money and avoid transaction reporting requirements. HAROLD PSALMS and MOHAMED ABDELMEGID AREF also laundered money represented by the undercover agents to be proceeds of narcotics trafficking.

E.  The Psalms Enterprise sought to expand its avenues for making illegal profits by trafficking in goods other than counterfeit and contraband cigarettes. HAROLD PSALMS, RONALD X. FORD JR. and Naresh Joitarem Patel trafficked in quantities of "Phillies Blunt" cigars and "Red Bull" energy drinks, believing that they were stolen.

F.  Members of the criminal enterprise, including HAROLD PSALMS, David Washington, Lester V. Eddings, Fredrick Lydell Stevenson, Giovanni L. Derisi, Andrea V. Codispoti, also trafficked in narcotics and delivered quantities of 3,4-methylenedioxymethamphetamine ("ecstasy") to undercover agents as payment for counterfeit and contraband cigarettes.

### THE RACKETEERING CONSPIRACY

6.    From approximately in or about November 2002 through the date of this Indictment, in the District of New Jersey, the Northern District of Illinois, the Eastern District of Pennsylvania and elsewhere,

**HAROLD PSALMS,**
**MOHAMED ABDELMEGID AREF,**
**RONALD X. FORD, JR.**
**and**
**MUSTAPHA C. KECHTBAN**

and others both known and unknown to the Grand Jury, being persons employed by and associated with the Psalms Enterprise described above, which enterprise was engaged in, and the activities of which affected interstate and foreign commerce, did knowingly and intentionally conspire and agree with each other and with other persons known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

11

**Pattern of Racketeering Activity**

7.      The pattern of racketeering activity, as defined by Title 18, United States Code,

Section 1961(1) and 1961(5) through which the defendants, HAROLD PSALMS, MOHAMED

ABDELMEGID AREF, RONALD X. FORD, JR. and MUSTAPHA C. KECHTBAN did

combine, conspire and agree with each other and others to conduct and participate in the conduct

of the affairs of the enterprise consisted of acts involving (1) trafficking in goods bearing

counterfeit marks, in violation of Title 18, United States Code, Section 2320; (2) trafficking in

contraband cigarettes, in violation of Title 18, United States Code, Section 2342; (3) distribution

of and conspiracy to distribute quantities of ecstasy, in violation of Title 21, United States Code,

Sections 841 and 846; and (4) money laundering, in violation of Title 18, United States Code,

Section 1956; which acts are set forth more particularly below in Racketeering Acts 1 through

21.

8.      It was part of the conspiracy that each defendant agreed that at least two acts of

racketeering activity would be committed by a conspirator in the conduct of the affairs of the

enterprise. The pattern of racketeering activity consisted of the following acts:

**Racketeering Act # 1**

The defendants named below committed the following acts, any one of which

alone constitutes the commission of Racketeering Act #1:

**Racketeering Act # 1(a) - (Trafficking in Goods Bearing Counterfeit Marks)**

[relates to Count 17]

9.      On or about February 11, 2003, in the District of New Jersey, the Northern

12

District of Illinois and elsewhere, HAROLD PSALMS and RONALD X. FORD, JR. did

intentionally traffic, attempt to traffic and aid and abet the trafficking in goods, namely,

approximately 100 cases of cigarettes, and did knowingly use a counterfeit mark on and in

connection with such goods, that is, the brand name "Marlboro," which counterfeit mark was

identical with and substantially indistinguishable from a genuine mark in use and duly registered

for those goods on the principal register in the United States Patent and Trademark Office, and

the use of which mark was likely to cause confusion, to cause mistake and to deceive, in

violation of Title 18, United States Code, Sections 2320(a) and 2.

**Racketeering Act # 1(b) - (Trafficking in Contraband Cigarettes)** [relates to Count 31]

    10.   On or about February 11, 2003, in the District of New Jersey, the Northern

District of Illinois and elsewhere, HAROLD PSALMS and RONALD X. FORD, JR. did

knowingly and unlawfully ship, transport, receive, possess, sell, distribute and purchase, and

cause the shipment, transport, receipt, possession, sale, distribution and purchase, of contraband

cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), namely,

approximately 100 cases of cigarettes which bore no evidence of the payment of applicable state

cigarette taxes for the state of Illinois, in violation of Title 18, United States Code, Sections

2342(a) and 2.

**Racketeering Act # 2**

        The defendants named below committed the following acts, any one of which

alone constitutes the commission of Racketeering Act #2:

**Racketeering Act # 2(a) - (Trafficking in Goods Bearing Counterfeit Marks)**

13

[relates to Count 18]

11.    On or about March 7, 2003, in the District of New Jersey, the Northern District of Illinois and elsewhere, HAROLD PSALMS and RONALD X. FORD, JR. did intentionally traffic, attempt to traffic and aid and abet the trafficking in goods, namely, approximately 225 cases of cigarettes, and did knowingly use counterfeit marks on and in connection with such goods, that is, the brand names "Marlboro" and "Marlboro Lights," which counterfeit marks were identical with and substantially indistinguishable from genuine marks in use and duly registered for those goods on the principal register in the United States Patent and Trademark Office, and the use of which mark was likely to cause confusion, to cause mistake and to deceive, in violation of Title 18, United States Code, Sections 2320(a) and 2.

**Racketeering Act #2(b) - (Trafficking in Contraband Cigarettes) [relates to Count 32]**

12.    On or about March 7, 2003, in the District of New Jersey, the Northern District of Illinois and elsewhere, HAROLD PSALMS and RONALD X. FORD, JR. did knowingly and unlawfully ship, transport, receive, possess, sell, distribute and purchase, and cause the shipment, transport, receipt, possession, sale, distribution and purchase, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), namely, approximately 225 cases of cigarettes which bore no evidence of the payment of applicable state cigarette taxes for the state of Illinois, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #3**

The defendants named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act #3:

14

**Racketeering Act # 3(a) - (Trafficking in Goods Bearing Counterfeit Marks)**

[relates to Count 19]

13.     On or about March 18, 2003, in the District of New Jersey, the Northern District of Illinois and elsewhere, HAROLD PSALMS and RONALD X. FORD, JR. did intentionally traffic, attempt to traffic and aid and abet the trafficking in goods, namely, approximately 200 cases of cigarettes, and did knowingly use counterfeit marks on and in connection with such goods, that is, the brand names "Marlboro" and "Marlboro Lights," which counterfeit marks were identical with and substantially indistinguishable from genuine marks in use and duly registered for those goods on the principal register in the United States Patent and Trademark Office, and the use of which marks was likely to cause confusion, to cause mistake and to deceive, in violation of Title 18, United States Code, Sections 2320(a) and 2.

**Racketeering Act #3(b) - (Trafficking in Contraband Cigarettes)** [relates to Count 33]

14.     On or about March 18, 2003, in the District of New Jersey, the Northern District of Illinois and elsewhere, HAROLD PSALMS and RONALD X. FORD, JR. did knowingly and unlawfully ship, transport, receive, possess, sell, distribute and purchase, and cause the shipment, transport, receipt, possession, sale, distribution and purchase, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), namely, approximately 200 cases of cigarettes which bore no evidence of the payment of applicable state cigarette taxes for the state of Illinois, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #4**

The defendants named below committed the following acts, any one of which

15

alone constitutes the commission of Racketeering Act #4:

**Racketeering Act # 4(a) - (Trafficking in Goods Bearing Counterfeit Marks)**

[relates to Count 20]

      15.    On or about March 27, 2003, in the District of New Jersey, the Northern

District of Illinois and elsewhere, HAROLD PSALMS, MOHAMED ABDELMEGID AREF,

RONALD X. FORD, JR. and MUSTAPHA C. KECHTBAN did intentionally traffic, attempt to

traffic and aid and abet the trafficking in goods, namely, approximately 100 cases of cigarettes,

and did knowingly use a counterfeit mark on and in connection with such goods, that is, the

brand name "Marlboro," which counterfeit mark was identical with and substantially

indistinguishable from genuine mark in use and duly registered for those goods on the principal

register in the United States Patent and Trademark Office, and the use of which mark was likely

to cause confusion, to cause mistake and to deceive, in violation of Title 18, United States Code,

Sections 2320(a) and 2.

**Racketeering Act #4(b) - (Trafficking in Contraband Cigarettes)** [relates to Count 34]

      16.    On or about March 27, 2003, in the District of New Jersey, the Northern District

of Illinois and elsewhere, HAROLD PSALMS, MOHAMED ABDELMEGID AREF, RONALD

X. FORD, JR. and MUSTAPHA C. KECHTBAN did knowingly and unlawfully ship, transport,

receive, possess, sell, distribute and purchase, and cause the shipment, transport, receipt,

possession, sale, distribution and purchase, of contraband cigarettes, as that term is defined in

Title 18, United States Code, Section 2341(2), namely, approximately 100 cases of cigarettes

which bore no evidence of the payment of applicable state cigarette taxes for the state of Illinois,

in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #5** - **(Laundering Monetary Instruments)** [relates to Count 46]

17.    From on or about April 1, 2003 to on or about April 18, 2003, in the

District of New Jersey, Northern District of Illinois, the Central District of California and

elsewhere, HAROLD PSALMS, knowing that the property involved in the financial transaction

represented the proceeds of some form of unlawful activity, and knowing that the transaction was

designed in whole or in part: (1) to conceal and disguise the nature, location, source, ownership,

and control of the proceeds of specified unlawful activity and (2) to avoid a transaction reporting

requirement under Federal law, did knowing and willfully conduct, attempt to conduct and cause

the conducting of a financial transaction affecting interstate and foreign commerce, specifically,

the receipt, transfer, delivery and other disposition of approximately $57,600 in United States

currency, involving the proceeds of specified unlawful activity, namely, trafficking in contraband

cigarettes contrary to Title 18, United States Code, Section 2342, in violation of Title 18, United

States Code, Sections 1956(a)(1) and 2.

**Racketeering Act #6** - **(Laundering Monetary Instruments)** [relates to Count 47]

18.    From on or about April 8, 2003 to on or about April 19, 2003, in the District of

New Jersey, Northern District of Illinois, the Central District of California and elsewhere,

HAROLD PSALMS, knowing that the property involved in the financial transaction represented

the proceeds of some form of unlawful activity, and knowing that the transaction was designed in

whole or in part: (1) to conceal and disguise the nature, location, source, ownership, and control

of the proceeds of specified unlawful activity and (2) to avoid a transaction reporting requirement

17

under Federal law, did knowing and willfully conduct, attempt to conduct and cause the conducting of a financial transaction affecting interstate and foreign commerce, specifically, the receipt, transfer, delivery, and other disposition of approximately $70,000 in United States currency, involving the proceeds of specified unlawful activity, namely, trafficking in contraband cigarettes contrary to Title 18, United States Code, Section 2342, in violation of Title 18, United States Code, Sections 1956(a)(1) and 2.

**Racketeering Act #7**

The defendants named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act #7:

**Racketeering Act # 7(a) - (Trafficking in Goods Bearing Counterfeit Marks)**

[relates to Count 21]

19.     On or about May 8, 2003, in the District of New Jersey, the Northern District of Illinois and elsewhere, HAROLD PSALMS and RONALD X. FORD, JR. did intentionally traffic, attempt to traffic and aid and abet the trafficking in goods, namely, approximately 100 cases of cigarettes, and did knowingly use counterfeit marks on and in connection with such goods, that is, the brand names "Marlboro" and "Marlboro Lights," which counterfeit marks were identical with and substantially indistinguishable from genuine marks in use and duly registered for those goods on the principal register in the United States Patent and Trademark Office, and the use of which marks was likely to cause confusion, to cause mistake and to deceive, in violation of Title 18, United States Code, Sections 2320(a) and 2.

**Racketeering Act #7(b) - (Trafficking in Contraband Cigarettes)** [relates to Count 35]

18

20.    On or about May 8, 2003, in the District of New Jersey, the Northern District of Illinois and elsewhere, HAROLD PSALMS and RONALD X. FORD, JR. did knowingly and unlawfully ship, transport, receive, possess, sell, distribute and purchase, and cause the shipment, transport, receipt, possession, sale, distribution and purchase, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), namely, approximately 100 cases of cigarettes which bore no evidence of the payment of applicable state cigarette taxes for the state of Illinois, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #8** - **(Laundering Monetary Instruments)** [relates to Count 48]

21.    From on or about May 12, 2003 to on or about May 15, 2003, in the District of New Jersey, Northern District of Illinois, the Central District of California and elsewhere, HAROLD PSALMS,  knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole or in part: (1) to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and (2) to avoid a transaction reporting requirement under Federal law, did knowing and willfully conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, specifically, the receipt, transfer, delivery and other disposition of approximately $47,000 in United States currency, involving the proceeds of specified unlawful activity, namely, trafficking in contraband cigarettes contrary to Title 18, United States Code, Section 2342, in violation of Title 18, United States Code, Sections 1956(a)(1) and 2.

**Racketeering Act #9**

The defendants named below committed the following acts, either one of which alone constitutes the commission of Racketeering Act #9:

**Racketeering Act #9(a) - (Laundering Monetary Instruments) [relates to Count 49]**

22.     On or about May 20, 2003, in the District of New Jersey, the Northern District of Illinois and elsewhere, HAROLD PSALMS, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole or in part: (1) to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and (2) to avoid a transaction reporting requirement under Federal law, did knowing and willfully conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, specifically, the receipt, transfer, delivery and other disposition of approximately $27,000 in United States currency, involving the proceeds of specified unlawful activity, namely, trafficking in contraband cigarettes contrary to Title 18, United States Code, Section 2342, in violation of Title 18, United States Code, Sections 1956(a)(1) and 2.

**Racketeering Act #9(b) - (Laundering Monetary Instruments) [relates to Count 50]**

23.     On or about May 28, 2003, in the District of New Jersey, the Northern District of Illinois and elsewhere, HAROLD PSALMS, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole or in part: (1) to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and (2) to avoid a

transaction reporting requirement under Federal law, did knowing and willfully conduct and

attempt to conduct a financial transaction affecting interstate and foreign commerce, specifically,

the receipt, transfer, delivery and other disposition of approximately $5,500 in United States

currency, involving the proceeds of specified unlawful activity, namely, trafficking in contraband

cigarettes contrary to Title 18, United States Code, Section 2342, in violation of Title 18, United

States Code, Sections 1956(a)(1) and 2.

**Racketeering Act #10**

    The defendants named below committed the following acts, either one of which

alone constitutes the commission of Racketeering Act #10:

**Racketeering Act #10(a) - (Trafficking in Goods Bearing Counterfeit Marks)**

[relates to Count 22]

  24. From on or about June 3, 2003 to on or about June 17, 2003, in the District

of New Jersey, the Northern District of Illinois and elsewhere, HAROLD PSALMS,

MOHAMED ABDELMEGID AREF, RONALD X. FORD, JR. and MUSTAPHA C.

KECHTBAN did intentionally traffic, attempt to traffic and aid and abet the trafficking in goods,

namely, approximately 898 cases of cigarettes, and did knowingly use counterfeit marks on and

in connection with such goods, that is, the brand names "Marlboro Lights" and "Newport," which

counterfeit marks were identical with and substantially indistinguishable from genuine marks in

use and duly registered for those goods on the principal register in the United States Patent and

Trademark Office, and the use of which marks was likely to cause confusion, to cause mistake,

and to deceive, in violation of Title 18, United States Code, Sections 2320(a) and 2.

21

**Racketeering Act #10(b) - (Trafficking in Contraband Cigarettes)** [relates to Count 36]

25.    From on or about June 3, 2003 to on or about June 17, 2003, in the District of New Jersey, the Northern District of Illinois and elsewhere, HAROLD PSALMS, MOHAMED ABDELMEGID AREF, RONALD X. FORD, JR. and MUSTAPHA C. KECHTBAN did knowingly and unlawfully ship, transport, receive, possess, sell, distribute and purchase, and cause the shipment, transport, receipt, possession, sale, distribution and purchase, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), namely, approximately 898 cases of cigarettes which bore no evidence of the payment of applicable state cigarette taxes for the state of Illinois, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #11**

The defendants named below committed the following acts, either one of which alone constitutes the commission of Racketeering Act #11:

**Racketeering Act #11(a) - (Laundering Monetary Instruments)** [relates to Count 51]

26.    From on or about June 10, 2003 to on or about June 25, 2003, in the District of New Jersey, the Northern District of Illinois and elsewhere, HAROLD PSALMS and MOHAMED ABDELMEGID AREF, with the intent (a) to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, and (b) to avoid a transaction reporting requirement under Federal law, did knowingly and willfully conduct and attempt to conduct a financial transaction, specifically the transfer, delivery and other disposition of $62,725 in United States currency represented by a law

22

enforcement officer to be the proceeds of specified unlawful activity, namely, the distribution of

narcotics contrary to Title 21, United States Code, Section 841, in violation of Title 18, United

States Code, Sections 1956(a)(3) and 2.

**Racketeering Act #11(b) - (Laundering Monetary Instruments) [relates to Count 52]**

27.    From on or about June 10, 2003 to on or about July 8, 2003, in the District of New

Jersey, the Northern District of Illinois and elsewhere, HAROLD PSALMS and MOHAMED

ABDELMEGID AREF, with the intent (a) to conceal or disguise the nature, location, source,

ownership, and control of property believed to be the proceeds of specified unlawful activity, and

(b) to avoid a transaction reporting requirement under Federal law, did knowingly and willfully

conduct and attempt to conduct a financial transaction, specifically the transfer, delivery, and

other disposition of $57,500 in United States currency represented by a law enforcement officer

to be the proceeds of specified unlawful activity, namely, the distribution of narcotics contrary to

Title 21, United States Code, Section 841, in violation of Title 18, United States Code, Sections

1956(a)(3) and 2.

**Racketeering Act #12**

The defendants named below committed the following acts, any one of which

alone constitutes the commission of Racketeering Act #12:

**Racketeering Act #12(a) - (Trafficking in Goods Bearing Counterfeit Marks)**

**[relates to Count 23]**

28.    On or about August 6, 2003, in the District of New Jersey, the Northern District of

Illinois and elsewhere, HAROLD PSALMS and RONALD X. FORD, JR. did intentionally

23

traffic, attempt to traffic and aid and abet the trafficking in goods, namely, approximately 124

cases of cigarettes, and did knowing use counterfeit marks on and in connection with such goods,

that is, the brand names "Marlboro," and "Marlboro Lights," which counterfeit marks were

identical with and substantially indistinguishable from genuine marks in use and duly registered

for those goods on the principal register in the United States Patent and Trademark Office, and

the use of which marks was likely to cause confusion, to cause mistake, and to deceive, in

violation of Title 18, United States Code, Sections 2320(a) and 2.

**Racketeering Act #12(b) - (Trafficking in Contraband Cigarettes) [relates to Count 37]**

29.     On or about August 6, 2003, in the District of New Jersey, the Northern District of

Illinois and elsewhere, HAROLD PSALMS and RONALD X. FORD, JR. did knowingly and

unlawfully ship, transport, receive, possess, sell, distribute and purchase, and cause the shipment,

transport, receipt, possession, sale, distribution and purchase, of contraband cigarettes, as that

term is defined in Title 18, United States Code, Section 2341(2), namely, approximately 124

cases of cigarettes which bore no evidence of the payment of applicable state cigarette taxes for

the state of Illinois, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #13**

               The defendants named below committed the following acts, any one of which

alone constitutes the commission of Racketeering Act #13:

**Racketeering Act #13(a) - (Conspiracy to Distribute Narcotics) [relates to Count 53]**

30.     From in or about August 2003 to on or about October 10, 2003, in the

District of New Jersey, the Northern District of Illinois and elsewhere, HAROLD PSALMS did

24

knowingly and intentionally conspire and agree with others to distribute and to possess with intent to distribute a quantity of 3,4-methylenedioxymethamphetamine ("MDMA"), namely ecstasy, a Schedule I narcotic drug controlled substance, contrary to Title 21, United States Code, Section 841(a), in violation of Title 21, United States Code, Section 846.

**Racketeering Act #13(b) - (Distribution of Narcotics) [relates to Count 54]**

31.     On or about October 10, 2003, in the District of New Jersey, the Northern District of Illinois and elsewhere, HAROLD PSALMS did knowingly and intentionally distribute and possess with intent to distribute a quantity of 3,4-methylenedioxymethamphetamine ("MDMA"), namely, ecstasy, a Schedule I narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a) (1) and Title 18, United States Code, Section 2.

**Racketeering Act #14**

The defendants named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act #14:

**Racketeering Act #14(a) - (Trafficking in Goods Bearing Counterfeit Marks)**

**[relates to Count 24]**

32.     On or about January 14, 2004, in the District of New Jersey, the Northern District of Illinois and elsewhere, HAROLD PSALMS, RONALD X. FORD, JR. and  MOHAMED ABDELMEGID AREF did intentionally traffic, attempt to traffic and aid and abet the trafficking in goods, namely, approximately 150 cases of cigarettes, and did knowingly use a counterfeit mark on and in connection with such goods, that is, the brand name "Newport 100's," which counterfeit mark was identical with and substantially indistinguishable from a genuine mark in

25

use and duly registered for those goods on the principal register in the United States Patent and

Trademark Office, and the use of which mark was likely to cause confusion, to cause mistake,

and to deceive, in violation of Title 18, United States Code, Sections 2320(a) and 2.

**Racketeering Act #14(b) - (Trafficking in Contraband Cigarettes) [relates to Count 38]**

33.    On or about January 14, 2004, in the District of New Jersey, the Northern District

of Illinois and elsewhere, HAROLD PSALMS, RONALD X. FORD, JR. and  MOHAMED

ABDELMEGID AREF did knowingly and unlawfully ship, transport, receive, possess, sell,

distribute and purchase, and cause the shipment, transport, receipt, possession, sale, distribution

and purchase, of contraband cigarettes, as that term is defined in Title 18, United States Code,

Section 2341(2), namely, approximately 150 cases of cigarettes which bore no evidence of the

payment of applicable state cigarette taxes for the state of Illinois, in violation of Title 18, United

States Code, Sections 2342(a) and 2.

**Racketeering Act #15**

The defendants named below committed the following acts, any one of which

alone constitutes the commission of Racketeering Act #15:

**Racketeering Act #15(a) - (Trafficking in Goods Bearing Counterfeit Marks)**

**[relates to Count 25]**

34.    On or about February 10, 2004, in the District of New Jersey, the Northern

District of Illinois and elsewhere, HAROLD PSALMS, RONALD X. FORD, JR. and

MOHAMED ABDELMEGID AREF did intentionally traffic, attempt to traffic and aid and abet

the trafficking in goods, namely, approximately 20 cases of cigarettes, and did knowingly use a

26

counterfeit mark on and in connection with such goods, that is, the brand name "Newport 100's," which counterfeit mark was identical with and substantially indistinguishable from a genuine mark in use and duly registered for those goods on the principal register in the United States Patent and Trademark Office, and the use of which mark was likely to cause confusion, to cause mistake, and to deceive, in violation of Title 18, United States Code, Sections 2320(a) and 2.

**Racketeering Act #15(b) - (Trafficking in Contraband Cigarettes) [relates to Count 39]**

35.    On or about February 10, 2004, in the District of New Jersey, the Northern District of Illinois and elsewhere, HAROLD PSALMS, RONALD X. FORD, JR. and MOHAMED ABDELMEGID AREF did knowingly and unlawfully ship, transport, receive, possess, sell, distribute and purchase, and cause the shipment, transport, receipt, possession, sale, distribution and purchase, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), namely, approximately 20 cases of cigarettes which bore no evidence of the payment of applicable state cigarette taxes for the state of Illinois, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #16**

The defendants named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act #16:

**Racketeering Act #16(a) - (Conspiracy to Distribute Narcotics) [relates to Count 55]**

36.    Between in or about November 2003 and on or about February 12, 2004, in the District of New Jersey, the Northern District of Illinois and elsewhere, HAROLD PSALMS did knowingly and intentionally conspire and agree with others to distribute and to possess with

intent to distribute a quantity of 3,4-methylenedioxymethamphetamine ("MDMA"), namely, ecstasy, a Schedule I narcotic drug controlled substance, contrary to Title 21, United States Code, Section 841(a), in violation of Title 21, United States Code, Section 846.

**Racketeering Act #16(b) - (Distribution of Narcotics) [relates to Count 56]**

37.    On or about February 12, 2004, in the District of New Jersey, the Northern District of Illinois and elsewhere, HAROLD PSALMS did knowingly and intentionally distribute and possess with intent to distribute a quantity of 3,4-methylenedioxymethamphetamine ("MDMA"), namely, ecstasy, a Schedule I narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and Title 18, United States Code, Section 2.

**Racketeering Act #17**

The defendants named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act #17:

**Racketeering Act #17(a) - (Trafficking in Goods Bearing Counterfeit Marks)**

**[relates to Count 26]**

38.    On or about February 24, 2004, in the District of New Jersey, the Northern District of Illinois and elsewhere, HAROLD PSALMS, RONALD X. FORD, JR. and MOHAMED ABDELMEGID AREF did intentionally traffic, attempt to traffic and aid and abet the trafficking in goods, namely, approximately 20 cases of cigarettes, and did knowingly use a counterfeit mark on and in connection with such goods, that is, the brand name "Newport 100's," which counterfeit mark was identical with and substantially indistinguishable from a genuine mark in use and duly registered for those goods on the principal register in the United States

28

Patent and Trademark Office, and the use of which mark was likely to cause confusion, to cause

mistake, and to deceive, in violation of Title 18, United States Code, Sections 2320(a) and 2.

**Racketeering Act #17(b) - (Trafficking in Contraband Cigarettes) [relates to Count 40]**

39.     On or about February 24, 2004, in the District of New Jersey, the Northern

District of Illinois and elsewhere, HAROLD PSALMS, RONALD X. FORD, JR. and

MOHAMED ABDELMEGID AREF did knowingly and unlawfully ship, transport, receive,

possess, sell, distribute and purchase, and cause the shipment, transport, receipt, possession, sale,

distribution and purchase, of contraband cigarettes, as that term is defined in Title 18, United

States Code, Section 2341(2), namely, approximately 20 cases of cigarettes which bore no

evidence of the payment of applicable state cigarette taxes for the state of Illinois, in violation of

Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #18**

The defendants named below committed the following acts, any one of which

alone constitutes the commission of Racketeering Act #18:

**Racketeering Act #18(a) - (Trafficking in Goods Bearing Counterfeit Marks)**

**[relates to Count 27]**

40.     On or about March 10, 2004, in the District of New Jersey, the Northern

District of Illinois, the Eastern District of Pennsylvania and elsewhere, HAROLD PSALMS and

RONALD X. FORD, JR. did intentionally traffic, attempt to traffic and aid and abet the

trafficking in goods, namely, approximately 40 cases of cigarettes, and did knowingly use a

counterfeit mark on and in connection with such goods, that is, the brand name "Newport 100's,"

29

which counterfeit mark was identical with and substantially indistinguishable from a genuine mark in use and duly registered for those goods on the principal register in the United States Patent and Trademark Office, and the use of which mark was likely to cause confusion, to cause mistake, and to deceive, in violation of Title 18, United States Code, Sections 2320(a) and 2.

**Racketeering Act #18(b) - (Trafficking in Contraband Cigarettes) [relates to Count 41]**

41.     On or about March 10, 2004, in the District of New Jersey, the Northern District of Illinois, the Eastern District of Pennsylvania and elsewhere, HAROLD PSALMS and RONALD X. FORD, JR. did knowingly and unlawfully ship, transport, receive, possess, sell, distribute and purchase, and cause the shipment, transport, receipt, possession, sale, distribution and purchase, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), namely, approximately 40 cases of cigarettes which bore no evidence of the payment of applicable state cigarette taxes for the state of Pennsylvania, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #19**

The defendants named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act #19:

**Racketeering Act #19(a) - (Trafficking in Goods Bearing Counterfeit Marks)** [relates to Count 28]

42.     On or about May 20, 2004, in the District of New Jersey, the Northern District of Illinois and elsewhere, HAROLD PSALMS, RONALD X. FORD, JR. and MOHAMED ABDELMEGID AREF did intentionally traffic, attempt to traffic and aid and abet

the trafficking in goods, namely, approximately 100 cases of cigarettes, and did knowingly use a counterfeit mark on and in connection with such goods, that is, the brand name "Newport 100's," which counterfeit mark was identical with and substantially indistinguishable from a genuine mark in use and duly registered for those goods on the principal register in the United States Patent and Trademark Office, and the use of which mark was likely to cause confusion, to cause mistake, and to deceive, in violation of Title 18, United States Code, Sections 2320(a) and 2.

**Racketeering Act #19(b) - (Trafficking in Contraband Cigarettes)** [relates to Count 42]

43.    On or about May 20, 2004, in the District of New Jersey, the Northern District of Illinois and elsewhere, HAROLD PSALMS, RONALD X. FORD, JR. and MOHAMED ABDELMEGID AREF did knowingly and unlawfully ship, transport, receive, possess, sell, distribute and purchase, and cause the shipment, transport, receipt, possession, sale, distribution and purchase, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), namely, approximately 100 cases of cigarettes which bore no evidence of the payment of applicable state cigarette taxes for the state of Illinois, in violation of Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #20**

The defendants named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act #20:

**Racketeering Act #20(a) - (Trafficking in Goods Bearing Counterfeit Marks)**

[relates to Count 29]

44.    On or about August 27, 2004, in the District of New Jersey, the Northern

31

District of Illinois and elsewhere, HAROLD PSALMS, RONALD X. FORD, JR. and

MOHAMED ABDELMEGID AREF did intentionally traffic, attempt to traffic and aid and abet

the trafficking in goods, namely, approximately 500 cases of cigarettes, and did knowing use

counterfeit marks on and in connection with such goods, that is, the brand names "Marlboro,"

"Marlboro Lights" and "Newport 100's," which counterfeit marks were identical with and

substantially indistinguishable from genuine marks in use and duly registered for those goods on

the principal register in the United States Patent and Trademark Office, and the use of which

marks was likely to cause confusion, to cause mistake, and to deceive, in violation of Title 18,

United States Code, Sections 2320(a) and 2.

**Racketeering Act #20(b) - (Trafficking in Contraband Cigarettes)** [relates to Count 43]

45.    On or about August 27, 2004, in the District of New Jersey, the Northern

District of Illinois and elsewhere, HAROLD PSALMS, RONALD X. FORD, JR. and

MOHAMED ABDELMEGID AREF did knowingly and unlawfully ship, transport, receive,

possess, sell, distribute and purchase, and cause the shipment, transport, receipt, possession, sale,

distribution and purchase, of contraband cigarettes, as that term is defined in Title 18, United

States Code, Section 2341(2), namely, approximately 500 cases of cigarettes which bore no

evidence of the payment of applicable state cigarette taxes for the state of Illinois, in violation of

Title 18, United States Code, Sections 2342(a) and 2.

**Racketeering Act #21**

The defendants named below committed the following acts, any one of which

alone constitutes the commission of Racketeering Act #21:

32

**Racketeering Act #21(a) - (Trafficking in Goods Bearing Counterfeit Marks)**

[relates to Count 30]

46.    On or about October 1, 2004, in the District of New Jersey, the Northern District of Illinois and elsewhere, HAROLD PSALMS did intentionally traffic, attempt to traffic and aid and abet the trafficking in goods, namely, approximately 200 cases of cigarettes, and did knowing use counterfeit marks on and in connection with such goods, that is, the brand names "Marlboro" and "Marlboro Lights" which counterfeit marks were identical with and substantially indistinguishable from genuine marks in use and duly registered for those goods on the principal register in the United States Patent and Trademark Office, and the use of which mark was likely to cause confusion, to cause mistake, and to deceive, in violation of Title 18, United States Code, Sections 2320(a) and 2.

**Racketeering Act #21(b) - (Trafficking in Contraband Cigarettes)** [relates to Count 44]

47.    On or about October 1, 2004, in the District of New Jersey, the Northern District of Illinois and elsewhere, HAROLD PSALMS did knowingly and unlawfully ship, transport, receive, possess, sell, distribute and purchase, and cause the shipment, transport, receipt, possession, sale, distribution and purchase, of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), namely, approximately 200 cases of cigarettes which bore no evidence of the payment of applicable state cigarette taxes for the state of Illinois, in violation of Title 18, United States Code, Sections 2342(a) and 2.

33

## OVERT ACTS

In furtherance of the conspiracy, and to effect the objects thereof, the defendants and their co-conspirators committed and caused to be committed the following overt acts, among others, in the District of New Jersey, the Northern District of Illinois, the Eastern District of Pennsylvania and elsewhere:

1.      Prior to on or about November 27, 2002, co-conspirators not named as defendants herein caused the transportation into Port Newark, New Jersey of two containers of counterfeit and contraband Marlboro and Marlboro Lights brand cigarettes totaling 2,129 cases falsely listed on the bills of lading, invoices and packing lists as wicker and rattan products (hereafter "November 2002 Shipment").

2.      On or about February 11, 2003, RONALD X. FORD, JR. and a co-conspirator not named as a defendant herein met with undercover agents in New Jersey and discussed the delivery of 100 cases from the November 2002 Shipment to HAROLD PSALMS in Chicago, Illinois.

3.      On or about February 11, 2003, RONALD X. FORD, JR. delivered 100 cases from the November 2002 Shipment an undercover warehouse in New Jersey (hereafter "undercover warehouse") to HAROLD PSALMS at an unknown location in or near Chicago, Illinois.

4.      On or about March 5, 2003, HAROLD PSALMS engaged in a telephone conversation with an undercover agent and discussed the retrieval of cigarettes from the November 2002 Shipment from the undercover warehouse.

5.      On or about March 7, 2003, RONALD X. FORD, JR. met with undercover agents in New Jersey, retrieved 225 cases from the November 2002 Shipment from the undercover warehouse, discussed a false bill of lading and informed the agents that the cigarettes were going to "Hal" in Chicago, Illinois.

6.      On or about March 15, 2003, HAROLD PSALMS engaged in a telephone conversation with an undercover agent and informed the agent that his driver "Ron" would pick up 200 cases from the November 2002 Shipment, that he wanted 200 additional cases delivered to Franklin Park, Illinois and that he would pay a delivery charge of $750.

7.      On or about March 18, 2003, RONALD X. FORD, JR. met with undercover agents at the undercover warehouse and retrieved 200 cases from the November 2002 Shipment to be delivered to HAROLD PSALMS in Illinois.

8.      Prior to March 27, 2003, MUSTAPHA C. KECHTBAN leased a warehouse at 9119 Medill Avenue, Franklin Park, Illinois (hereafter "Franklin Park warehouse") to store counterfeit and contraband cigarettes and a tax stamp machine, among other items.

9.      On or about March 27, 2003, undercover agents delivered 100 cases from the November 2002 Shipment from the undercover warehouse to the Franklin Park warehouse, where HAROLD PSALMS, MOHAMED ABDELMEGID AREF, RONALD X. FORD, JR., MUSTAPHA C. KECHTBAN, Steve C. Takla and Edward Gene Saad took possession of the cigarettes.

10.     On or about March 27, 2003, HAROLD PSALMS and RONALD X. FORD, JR. met with an undercover agent in Illinois and discussed the transportation of counterfeit and

35

contraband cigarette, the undercover agent's ability to obtain "Phillies Blunt" brand cigars and HAROLD PSALMS' ability to launder money through an electronics company.

11.     On or about April 1, 2003, HAROLD PSALMS drove two co-conspirators not named as defendants herein to a restaurant in Chicago, Illinois where the two co-conspirators provided an undercover agent with a bag containing $60,000 in cash.

12.     Prior to on or about April 19, 2003, HAROLD PSALMS forwarded to a co-conspirator not named as a defendant herein a LaSalle Bank, N.A. cashier's check made payable to the co-conspirator in the amount of $50,000 and nineteen money orders in the total amount of $20,000, which were deposited into an account maintained by the co-conspirator at the Cathay Bank, Los Angeles, California.

13.     On or about May 8, 2003, RONALD X. FORD, JR. drove a Budget rental truck to the undercover warehouse and retrieved 100 cases of counterfeit and contraband cigarettes to be delivered to HAROLD PSALMS in Illinois.

14.     On or about May 14, 2003, HAROLD PSALMS engaged in a telephone conversation with an undercover agent, informed the agent he was collecting money from the sale of the cigarettes delivered by RONALD X. FORD, agreed to wire transfer money to the agent and discussed the arrival date for the next shipment of counterfeit and contraband cigarettes.

15.     Prior to on or about May 15, 2003, HAROLD PSALMS forwarded to a co-conspirator not named as a defendant herein a LaSalle Bank, N.A. cashier's check in the name of the co-conspirator in the amount of $17,000 and thirty money orders in the total amount of

36

$30,000, which were deposited into an account maintained by the co-conspirator at the Cathay Bank, Los Angeles, California.

16.    On or about May 20, 2003, HAROLD PSALMS caused the wire transfer of approximately $27,000 from an account maintained by Gametek of Illinois, Inc., at the LaSalle Bank in Illinois to an undercover bank account in New Jersey as partial payment for delivery of 100 cases of counterfeit and contraband cigarettes.

17.    On or about May 28, 2003, HAROLD PSALMS caused the wire transfer of approximately $5,500 from an account maintained by Gametek of Illinois, Inc. at the LaSalle Bank, Lombard, Illinois to undercover bank account in New Jersey as partial payment for delivery of 100 cases of counterfeit and contraband cigarettes.

18.    On or about May 30, 2003, HAROLD PSALMS engaged in a telephone conversation with an undercover agent, acknowledged laundering money for a co-conspirator not named as a defendant herein, discussed laundering $125,000 for the agent, and was informed by the agent that the container of counterfeit and contraband cigarettes destined for Chicago was scheduled to arrive in New Jersey on or about June 5, 2003.

19.    Prior to on or about June 3, 2003, co-conspirators not named as defendants herein caused the transportation into Port Newark, New Jersey of a container of counterfeit Marlboro Lights and Newport 100's brand cigarettes totaling 898 cases falsely listed on the bill of lading, invoice and packing list as wicker and rattan products (the June 2003 Shipment).

20.    On or about June 9, 2003, HAROLD PSALMS met with an undercover agent in Rosemount, Illinois, informed the agent that MOHAMED ABDELMEGID AREF and another

37

unknown individual would charge a commission of 3 1/2% to launder $125,000 represented by

the undercover agents to be proceeds from the agent's distribution of heroin and discussed

exchanging Phillies Blunt brand cigars for ecstasy pills.

21.    On or about June 10, 2003, HAROLD PSALMS and MOHAMED

ABDELMEGID AREF met with an undercover agent in Des Plaines, Illinois, discussed the

distribution of counterfeit and contraband cigarettes, money laundering, the exchange of Phillies

Blunt brand cigars for ecstasy and received from the undercover agent $125,000, represented by

the undercover agent to be proceeds from the distribution of heroin.

22.    On or about June 16, 2003, RONALD X. FORD, JR. retrieved the June 2003

Shipment from the undercover warehouse.

23.    On or about June 17, 2003, RONALD X. FORD, JR. delivered the June 2003

Shipment to the Franklin Park warehouse.

24.    Prior to on or about June 25, 2003, HAROLD PSALMS and MOHAMED

ABDELMEGID AREF mailed and caused the mailing to an undercover agent of a Federal

Express package containing laundered monetary instruments in the approximate amount of

$62,725, including a business check drawn on a Uniglobe International business account

maintained by MOHAMMED ABDELMEGID AREF at TCF National Bank in Illinois, cashier's

checks from various banks and money orders from various financial institutions.

25.    On or about July 1, 2003, Naresh Joitarem Patel met with undercover agents in

Atlantic City, New Jersey and discussed the pending exchange of Phillies Blunt brand cigars for

ecstasy.

26.     Prior to on or about July 8, 2003, HAROLD PSALMS and MOHAMED

ABDELMEGID AREF mailed and caused the mailing to an undercover agent of a United Parcel

Service package containing laundered monetary instruments in the approximate amount of

$57,500, specifically, two business checks drawn on a Uniglobe International business account

maintained by MOHAMMED ABDELMEGID AREF at TCF National Bank in Illinois.

27.     On or about July 25, 2003, HAROLD PSALMS engaged in a telephone

conversation with an undercover agent, informed the agent that Naresh Joitarem Patel would

obtain an ecstasy sample and that Patel would receive a portion of the counterfeit and contraband

cigarettes to be delivered to Illinois by undercover agents.

28.     On or about August 6, 2003, undercover agents delivered 124 cases of counterfeit

and contraband cigarettes and 40 cases of Phillies Blunt brand cigars to a location in Chicago,

Illinois where HAROLD PSALMS, RONALD X. FORD, JR. and Lloyd Thames took receipt of

the cigars and cigarettes and loaded them into a truck rented by HAROLD PSALMS.

29.     On or about August 16, 2003, HAROLD PSALMS engaged in a telephone

conversation with an undercover agent, advised the agent that Naresh Joitarem Patel sold a small

portion of the Phillies Blunt brand cigars, that RONALD X. FORD, JR. retrieved the remainder

of the cigars and that PSALMS would pay the money owed to the agent for the delivery of

Phillies Blunt brand cigars and counterfeit and contraband cigarettes.

30.     On or about October 3, 2003, HAROLD PSALMS engaged in a telephone

conversation with an undercover agent, advised the agent that he was meeting with David

Washington to discuss ecstasy and asked whether the agent had access to large quantities of Red

Bull energy drink for MOHAMED ABDELMEGID AREF.

31.    On or about October 3, 2003, HAROLD PSALMS engaged in a telephone conversation with an undercover agent, informed the agent that he had access to ecstasy through David Washington and discussed the price of ecstasy and arrangements for delivery to the agent.

32.    On or about October 7, 2003, HAROLD PSALMS and David Washington engaged in a telephone conversation with an undercover agent and discussed arrangements for the delivery of ecstasy pills to the agent in Atlantic City, New Jersey.

33.    On or about October 10, 2003, David Washington, Lester V. Eddings and Fredrick Lydell Stevenson delivered approximately 3,955 ecstasy pills to undercover agents in New Jersey at the direction of HAROLD PSALMS as payment for the delivery to PSALMS of Phillies Blunt brand cigars and counterfeit and contraband cigarettes.

34.    On or about November 6, 2003, HAROLD PSALMS met with an undercover agent, discussed money owed to the agent for the delivery of Phillies Blunt brand cigars and told the agent that he would speak to Giovanni L. DeRisi regarding obtaining additional quantities of ecstasy.

35.    On or about November 21, 2003, Giovanni L. DeRisi met with an undercover agent in Ontario, Canada and informed the agent that ecstasy would be delivered to DeRisi from Montreal or Toronto, Canada.

36.    On or about January 8, 2004, HAROLD PSALMS engaged in a telephone conversation with an undercover agent, informed the agent that Giovanni L. DeRisi obtained

ecstasy for the agent and was advised that the agent had 150 cases of counterfeit and contraband cigarettes and a quantity of Red Bull energy drink.

37.    On or about January 14, 2004, RONALD X. FORD, JR. retrieved 150 cases and 576 cases of Red Bull energy drink from the undercover warehouse and delivered them to an unknown location in Illinois.

38.    On or about January 16, 2004, HAROLD PSALMS engaged in a telephone conversation with an undercover agent and acknowledged receipt of 150 cases of counterfeit and contraband cigarettes and 576 cases of Red Bull energy drink retrieved by RONALD X. FORD, JR.

39.    On or about January 22, 2004, HAROLD PSALMS engaged in a telephone conversation with an undercover agent and discussed arrangements for the delivery of ecstasy by Giovanni L. DeRisi, future deliveries of counterfeit and contraband cigarettes by the undercover agents and distribution outlets for counterfeit and contraband cigarettes controlled by PSALMS in Philadelphia, Pennsylvania, Detroit, Michigan and New York.

40.    On or about February 4, 2004, HAROLD PSALMS, MOHAMED ABDELMEGID AREF and Ajaykumar Ratilal Joshi met with undercover agents in Chicago and discussed future deliveries of counterfeit and contraband cigarettes destined for associates of AREF and the receipt by Joshi of counterfeit and contraband cigarettes from the last delivery by RONALD X. FORD, JR.

41.    On or about February 6, 2004, HAROLD PSALMS engaged in a telephone conversation with an undercover agent and discussed the retrieval of counterfeit and contraband

cigarettes from the agents for MOHAMED ABDELMEGID AREF and the price per carton of the cigarettes distributed by PSALMS and AREF.

42.    On or about February 10, 2004, RONALD X. FORD, JR. retrieved 20 cases of cigarettes from the undercover warehouse at the direction of HAROLD PSALMS and provided an undercover agent with a note from PSALMS and $6,000 to be paid to Giovanni L. DeRisi as a commission for the ecstasy deal.

43.    On or about February 12, 2004,  Giovanni L. DeRisi met with undercover agents in a hotel in Toronto, Canada, provided the agents with approximately 12,000 ecstasy pills and received $6,000 from the agents as a commission.

44.    On or about February 24, 2004, RONALD X. FORD, JR. retrieved 20 cases of counterfeit and contraband cigarettes from the undercover warehouse at the direction of HAROLD PSALMS.

45.    On or about March 9, 2004,  HAROLD PSALMS engaged in a telephone conversation with an undercover agent and discussed the delivery of counterfeit and contraband cigarettes to Walid M. Hasan in Philadelphia, Pennsylvania.

46.    On or about March 10, 2004, undercover agents, at the direction of HAROLD PSALMS, delivered 40 cases of counterfeit and contraband cigarettes to a location in Philadelphia, Pennsylvania where RONALD X. FORD, JR. and Walid M. Hasan took receipt of the cigarettes.

47.    On or about April 27, 2004, Giovanni L. DeRisi and Andrea V. Codispoti met

with undercover agents in Toronto, Canada, discussed the previous delivery of 12,000 ecstasy pills and negotiated the purchase of an additional 6,000 ecstasy pills by an undercover agent.

48.     On or about April 29, 2004, Giovanni L. DeRisi and Andrea V. Codispoti met with undercover Royal Canadian Mounted Police (hereafter "RCMP") agents in Toronto, Canada and provided the undercover RCMP agents with 6,000 ecstasy pills in exchange for approximately $32,140 in Canadien currency.

49.     On or about May 18, 2004, HAROLD PSALMS engaged in a telephone conversation with an undercover agent, discussed payment of $77,000 owed to the agent and arrangements for the retrieval of 100 cases of counterfeit and contraband cigarettes from the undercover warehouse by RONALD X. FORD, JR.

50.     On or about May 20, 2004, RONALD X. FORD, JR. retrieved 100 cases of counterfeit and contraband cigarettes from the undercover warehouse at the direction of HAROLD PSALMS and informed agents that he had to pick up 20 cases of cigarettes from Walid M. Hasan in Philadelphia, Pennsylvania.

51.     On or about June 21, 2004, HAROLD PSALMS met with an undercover agent in Atlantic City, New Jersey and informed the agent that MOHAMED ABDELMEGID AREF would mail a $20,000 certified check from an untraceable account to the agent as payment for the agent's delivery services.

52.     Prior to on or about July 12, 2004, HAROLD PSALMS mailed and caused the mailing to an undercover agent of a United Parcel Service package containing a check totaling $3,000 drawn on a MB Financial Bank account maintained by PSALMS and a check totaling

43

$17,000 drawn on a Uniglobe International business account maintained by MOHAMMED ABDELMEGID AREF at TCF National Bank.

53.    Prior to on or about July 22, 2004, co-defendants not named as defendants herein caused the transportation into Port Newark, New Jersey of a container of counterfeit and contraband Marlboro, Marlboro Lights and Newport 100's brand cigarettes falsely listed on the Bill of Lading and Invoice as wicker and rattan products (hereafter "August 2004 Shipment").

54.    On or about August 22, 2004, HAROLD PSALMS engaged in a telephone conversation with an undercover agent and discussed the retrieval of a portion of the August 2004 Shipment from the undercover warehouse.

55.    On or about August 27, 2004, RONALD X. FORD, JR. retrieved 500 cases from the August 2004 Shipment from the undercover warehouse at the direction of HAROLD PSALMS and delivered the cigarettes to an unknown location.

56.    On or about September 9, 2004, HAROLD PSALMS engaged in a telephone conversation with an undercover agent, discussed the return of 150-180 cases from the August 2004 Shipment because of poor quality and informed the agent that his girlfriend sent $17,000 owed to the agent.

57.    On or about September 20, 2004, HAROLD PSALMS met with undercover agents and a co-conspirator not named as a defendant herein responsible for the August 2004 Shipment, provided the co-conspirator with approximately $75,000 from the sale of contraband and counterfeit cigarettes, discussed problems with a portion of the cigarettes transported to Chicago, agreed to distribute the 200 cases remaining from the August 2004 Shipment and

negotiated the delivery of another container of counterfeit and contraband cigarettes to PSALMS in Chicago.

58.    On or about October 1, 2004, Peter Y. Norfleet III retrieved 200 cases from the August 2004 Shipment from the undercover warehouse at the direction of HAROLD PSALMS and delivered the cigarettes to an unknown location.

59.    On or about October 20, 2004, HAROLD PSALMS and MOHAMMED ABDELMEGID AREF engaged in a telephone conversation with a co-conspirator not named as a defendant herein, informed the co-conspirator that AREF would distribute a large amount of cigarettes that day and discussed $60,000 owed to the co-conspirator for the August 2004 Shipment.

60.    On or about October 25, 2004, HAROLD PSALMS engaged in a telephone conversation with an undercover agent and discussed a debt of $120,000 owed by MOHAMMED ABDELMEGID AREF to PSALMS and shipping 200 cases of cigarettes from the August 2004 Shipment back to the undercover warehouse because of poor quality.

61.    On or about January 6, 2005, Lloyd J. Thames engaged in a telephone conversation with an undercover agent and discussed the sale of counterfeit and contraband cigarettes by Thames and the return of approximately 200 cases from the August 2004 Shipment because of poor quality.

62.    On or about January 24, 2005, HAROLD PSALMS engaged in a telephone conversation with an undercover agent, informed the agent that cigarettes from the August 2004 Shipment were stored at a warehouse controlled by Lloyd J. Thames and discussed the return of

45

cigarettes from the August 2004 Shipment by Thames.

63.    On or about January 31, 2005, at the direction of HAROLD PSALMS and Lloyd

J. Thames, a co-conspirator not named as defendant herein returned 172 cases of Newport 100's

from the August 2004 Shipment to the undercover warehouse because of poor quality.

64.    On or about February 17, 2005, a co-conspirator responsible for the August 2004

Shipment met with an undercover agent, provided the agent with a sample carton of counterfeit

and contraband cigarettes from a new shipment (hereafter "the sample carton") and asked the

agent to forward the sample carton to HAROLD PSALMS.

65.    On or about February 25, 2005, an undercover agent sent the sample carton to an

address provided by HAROLD PSALMS.

All in violation of Title 18, United States Code, Section 1962(d).

## FIRST FORFEITURE ALLEGATION

1.      The allegations in Count One are hereby repeated, realleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963.  Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 1963 in the event of any defendant's conviction under Count One of this Indictment.

2.      The defendants, HAROLD PSALMS, MOHAMED ABDELMEGID AREF, RONALD X. FORD, JR. and MUSTAPHA C. KECHTBAN:

i.     have acquired and maintained interests in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

ii.    have property constituting and derived from proceeds which they obtained, directly and indirectly, from the aforesaid pattern of racketeering activity in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

3.      The interests of the defendants subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1) and (3) include but are not limited to at least two million dollars ($2,000,000).

4.      If any of the property described in paragraphs 2 and 3 above, as a result of any act or omission of a defendant:

47

(1)    cannot be located upon the exercise of due diligence;

(2)    has been transferred or sold to, or disposed with, a third party;

(3)    has been placed beyond the jurisdiction of the Court;

(4)    has been substantially diminished in value; or

(5)    has been commingled with other property which cannot be divided without difficulty;

the Court shall order the forfeiture of any other property of the defendants up to the value of any property set forth in paragraphs 2 and 3 above, pursuant to Title 18, United States Code, Section 1963(m);

5.    The above-named defendants, and each of them, are jointly and severally liable for the forfeiture obligations as alleged above.

All pursuant to Title 18, United States Code, Section 1963.

48

<u>COUNT TWO</u>

**(Conspiracy to Smuggle Cigarettes into the United States, Traffic in Goods Bearing
Counterfeit Marks and Traffic in Contraband Cigarettes)**

1.      The allegations set forth in the Introduction of this Indictment and in the Overt

Acts alleged in Count One are re-alleged and incorporated as if fully set out herein.

2.      Beginning in or about January 2003, and continuing through the date of this

Indictment, in the District of New Jersey, the Northern District of Illinois, the Eastern District of

Pennsylvania and elsewhere, defendants,

**HAROLD PSALMS,
RONALD X. FORD, JR.,
MOHAMED ABDELMEGID AREF,
MUSTAPHA C. KECHTBAN,
STEVE C. TAKLA,
EDWARD GENE SAAD,
LLOYD J. THAMES,
NARESH JOITAREM PATEL,
AJAYKUMAR RATILAL JOSHI,
WALID M. HASAN
and
PETER Y. NORFLEET III**

did knowingly and willfully conspire and agree with each other, with other unindicted co-

conspirators, and with others both known and unknown to the grand jury, to commit the

following offenses against the United States, that is:

1)      to fraudulently and knowingly import and bring into the United States merchandise,

namely, counterfeit and contraband cigarettes, contrary to law, and receive, conceal, buy,

49

sell and in any manner facilitate the transportation, concealment and sale of such counterfeit and contraband cigarettes after importation, knowing the counterfeit and contraband cigarettes to have been imported and brought into the United States contrary to law, contrary to Title 18, United States Code, Section 545;

2)    to intentionally traffic in goods, namely, cigarettes, and knowingly use counterfeit marks on and in connection with such cigarettes, contrary to  Title 18, United States Code, Section 2320(a); and

3)    to unlawfully and knowingly ship, transport, receive, possess, sell, distribute and purchase contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2), namely, millions of cigarettes, which bear no evidence of the payment of applicable state cigarette taxes, contrary to Title 18, United States Code, Section 2342(a);

All in violation of Title 18, United States Code, Section 371.

## COUNTS THREE Through SIXTEEN
### (Smuggling Contraband and Counterfeit Cigarettes)

1.      The allegations set forth in the Introduction of this Indictment and in the Overt

Acts alleged in Count One are re-alleged and incorporated as if fully set out herein.

2.      On or about the dates alleged below, in the District of New Jersey, the Northern

District of Illinois, the Eastern District of Pennsylvania and elsewhere, the defendants set forth

below did fraudulently and knowingly receive, conceal, buy, sell, and in any manner facilitate the

transportation, concealment and sale of merchandise, namely counterfeit and contraband

cigarettes, in the amounts alleged below, after importation into the United States, knowing the

counterfeit and contraband cigarettes to have been imported and brought into the United States

contrary to law, in that co-conspirators not named as defendants herein did make out and pass

and cause the making out and passing of false, forged and fraudulent invoices, documents and

paper pertaining to said merchandise, contrary to Title 18, United States Code, Sections 542,

1001, and  Title 19, United States Code, Section 1481:

| Count | Date(s) | Defendant(s) | Number of Cases and Cigarettes |
|---|---|---|---|
| 3 | On or about February 11, 2003 | **HAROLD PSALMS** **and** **RONALD X. FORD, JR.** | 100 cases; 1,000,000 cigarettes |
| 4 | On or about March 7, 2003 | **HAROLD PSALMS** **and** **RONALD X. FORD, JR.** | 225 cases; 2,250,000 cigarettes |

| Count | Date(s) | Defendant(s) | Number of Cases and Cigarettes |
|---|---|---|---|
| 5 | On or about March 18, 2003 | **HAROLD PSALMS** **and** **RONALD X. FORD, JR.** | 200 cases; 2,000,000 cigarettes |
| 6 | On or about March 27, 2003 | **HAROLD PSALMS,** **MOHAMED ABDELMEGID AREF,** **RONALD X. FORD, JR.,** **MUSTAPHA C. KECHTBAN,** **STEVE C. TAKLA** **and** **EDWARD GENE SAAD** | 100 cases; 1,000,000 cigarettes |
| 7 | On or about May 8, 2003 | **HAROLD PSALMS** **and** **RONALD X. FORD, JR.** | 100 cases; 1,000,000 cigarettes |
| 8 | From on or about June 3, 2003 to June 17, 2003 | **HAROLD PSALMS,** **MOHAMED ABDELMEGID AREF,** **RONALD X. FORD, JR.** **and** **MUSTAPHA C. KECHTBAN** | 898 cases (60 carton); 10,776,000 cigarettes |
| 9 | On or about August 6, 2003 | **HAROLD PSALMS,** **RONALD X. FORD, JR.,** **LLOYD J. THAMES** **and** **NARESH JOITAREM PATEL** | 124 cases; 1,240,000 cigarettes |

| Count | Date(s) | Defendant(s) | Number of Cases and Cigarettes |
|---|---|---|---|
| 10 | On or about January 14, 2004 | **HAROLD PSALMS, RONALD X. FORD, JR., MOHAMED ABDELMEGID AREF** and **AJAYKUMAR RATILAL JOSHI** | 150 cases; 1,500,000 cigarettes |
| 11 | On or about February 10, 2004 | **HAROLD PSALMS, RONALD X. FORD, JR.** and **MOHAMED ABDELMEGID AREF** | 20 cases; 200,000 cigarettes |
| 12 | On or about February 24, 2004 | **HAROLD PSALMS, RONALD X. FORD, JR.** and **MOHAMED ABDELMEGID AREF** | 20 cases; 200,000 cigarettes |
| 13 | On or about March 10, 2004 | **HAROLD PSALMS, RONALD X. FORD, JR.** and **WALID M. HASAN** | 40 cases; 400,000 cigarettes |
| 14 | On or about May 20, 2004 | **HAROLD PSALMS, RONALD X. FORD, JR.** and **MOHAMED ABDELMEGID AREF** | 100 cases; 1,000,000 cigarettes |

53

| Count | Date(s) | Defendant(s) | Number of Cases and Cigarettes |
|-------|---------|--------------|-------------------------------|
| 15 | On or about August 27, 2004 | **HAROLD PSALMS, RONALD X. FORD, JR. and MOHAMED ABDELMEGID AREF** | 500 cases; 5,000,000 cigarettes |
| 16 | On or about October 1, 2004 | **HAROLD PSALMS and PETER Y. NORFLEET III** | 200 cases; 2,000,000 cigarettes |

In violation of Title 18, United States Code, Sections 545 and 2.

54

## SECOND FORFEITURE ALLEGATION

1. The allegations contained in Counts 3 through 16 are incorporated as if set forth at length herein for the purposes of noticing forfeiture, pursuant to Title 18, United States Code, Section 982(a)(2).

2. Pursuant to Title 18, United States Code, Section 982(a)(2), each defendant who is convicted of an offense set forth in Counts 3 through 16 of this Indictment shall forfeit to the United States the following property:

a. All right, title, and interest in any and all property involved in each offense in violation of Title 18, United States Code, Section 545 for which the defendant is convicted, and all property traceable to such property, including the following:

(i) all money and other property that was the subject of each transaction, transportation, transmission, and transfer in violation of Title 18, United States Code, Section 1956;

(ii) all commission, fees and other property constituting proceeds obtained as a result of those violations; and

(iii) all property used in any manner and part to commit and to facilitate the commission of those violations.

b. A money judgment equal to the total amount of money involved in any offense set forth in Counts 3 through 16 for which each defendant is convicted. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable

for the amount involved in the offense.

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), each defendant shall forfeit substitute property, up to the value of the amount described in paragraph 2 above, if, by any act and omission of any defendant, the property described in paragraph 2, or any portion there of:

     a. cannot be located upon the exercise of due diligence;

     b. has been transferred, sold to or deposited with a third party;

     c. has been placed beyond the jurisdiction of the court;

     d. has been substantially diminished in value; or

     e. has been commingled with other property which cannot be divided without difficulty.

Pursuant to Title 18, United States Code, Section 982(a)(2).

## COUNTS SEVENTEEN through THIRTY
## (Trafficking in Goods Bearing Counterfeit Marks)

1.    The allegations set forth in the Introduction of this Indictment and in the Overt

Acts alleged in Count One are re-alleged and incorporated as if fully set out herein.

2.    On or about the dates alleged below, in the District of New Jersey, the Northern

District of Illinois, the Eastern District of Pennsylvania and elsewhere, the defendants set forth

below did intentionally traffic, attempt to traffic and aid and abet the trafficking in goods,

namely, cigarettes, and did knowingly use and aid and abet the use of counterfeit marks, as

alleged below, on and in connection with such goods, which marks were identical with and

substantially indistinguishable from genuine marks in use and duly registered for those goods on

the principal register in the United States Patent and Trademark Office, and the use of which

marks was likely to cause confusion, to cause mistake and to deceive:

| Count | Date(s) | Defendant(s) | Counterfeit Merchandise and Counterfeit Marks |
|---|---|---|---|
| 17 | On or about February 11, 2003 | **HAROLD PSALMS** **and** **RONALD X. FORD, JR.** | 100 cases; 1,000,000 cigarettes; Marlboro |
| 18 | On or about March 7, 2003 | **HAROLD PSALMS** **and** **RONALD X. FORD, JR.** | 225 cases; 2,250,000 cigarettes; Marlboro Marlboro Lights |

| Count | Date(s) | Defendant(s) | Counterfeit Merchandise and Counterfeit Marks |
|---|---|---|---|
| 19 | On or about March 18, 2003 | **HAROLD PSALMS** and **RONALD X. FORD, JR.** | 200 cases; 2,000,000 cigarettes; Marlboro Marlboro Lights |
| 20 | On or about March 27, 2003 | **HAROLD PSALMS, MOHAMED ABDELMEGID AREF, RONALD X. FORD, JR., MUSTAPHA C. KECHTBAN, STEVE C. TAKLA** and **EDWARD GENE SAAD** | 100 cases; 1,000,000 cigarettes; Marlboro Marlboro Lights |
| 21 | On or about May 8, 2003 | **HAROLD PSALMS** and **RONALD X. FORD, JR.** | 100 cases; 1,000,000 cigarettes; Marlboro Marlboro Lights |
| 22 | From on or about June 3, 2003 to June 17, 2003 | **HAROLD PSALMS, MOHAMED ABDELMEGID AREF, RONALD X. FORD, JR.** and **MUSTAPHA C. KECHTBAN** | 898 cases; 10,776,000 cigarettes; Marlboro Light Newport |
| 23 | On or about August 6, 2003 | **HAROLD PSALMS, RONALD X. FORD, JR., LLOYD J. THAMES** and **NARESH JOITAREM PATEL** | 124 cases; 1,240,000 cigarettes Marlboro Marlboro Lights |

| Count | Date(s) | Defendant(s) | Counterfeit Merchandise and Counterfeit Marks |
|---|---|---|---|
| 24 | On or about January 14, 2004 | HAROLD PSALMS, RONALD X. FORD, JR., MOHAMED ABDELMEGID AREF and AJAYKUMAR RATILAL JOSHI | 150 cases; 1,500,000 cigarettes; Newport 100's |
| 25 | On or about February 10, 2004 | HAROLD PSALMS, RONALD X. FORD, JR. and MOHAMED ABDELMEGID AREF | 20 cases; 200,000 cigarettes; Newport 100's |
| 26 | On or about February 24, 2004 | HAROLD PSALMS, RONALD X. FORD, JR. and MOHAMED ABDELMEGID AREF | 20 cases; 200,000 cigarettes; Newport 100's |
| 27 | On or about March 10, 2004 | HAROLD PSALMS, RONALD X. FORD, JR. and WALID M. HASAN | 40 cases; 400,000 cigarettes; Newport 100's |
| 28 | On or about May 20, 2004 | HAROLD PSALMS, RONALD X. FORD, JR. and MOHAMED ABDELMEGID AREF | 100 cases; 1,000,000 cigarettes Newport 100's |

| Count | Date(s) | Defendant(s) | Counterfeit Merchandise and Counterfeit Marks |
|-------|---------|--------------|-----------------------------------------------|
| 29 | On or about August 27, 2004 | **HAROLD PSALMS, RONALD X. FORD, JR. and MOHAMED ABDELMEGID AREF** | 500 cases; 5,000,000 cigarettes; Marlboro Marlboro Lights Newport 100's |
| 30 | On or about October 1, 2004 | **HAROLD PSALMS and PETER Y. NORFLEET III** | 200 cases; 2,000,000 cigarettes Marlboro Marlboro Lights |

In violation of Title 18, United States Code, Sections 2320(a) and 2.

## COUNTS THIRTY ONE through FORTY FOUR
### (Trafficking in Contraband Cigarettes)

1.     The allegations set forth in the Introduction of this Indictment and in the Overt

Acts alleged in Count One are re-alleged and incorporated as if fully set out herein.

2.     On or about the dates alleged below, in the District of New Jersey, the Northern

District of Illinois, the Eastern District of Pennsylvania and elsewhere, the defendants set forth

below did knowingly and unlawfully ship, transport, receive, possess, sell, distribute and

purchase and cause the shipment, transport, receipt, possession, sale, distribution and purchase,

of contraband cigarettes, as that term is defined in Title 18, United States Code, Section 2341(2),

in the approximate amount(s) set forth below, which bore no evidence of the payment of

applicable state cigarette taxes for the state(s) alleged below:

| Count | Date(s) and state(s) | Defendant(s) | Number of Cases and Cigarettes |
|---|---|---|---|
| 31 | On or about February 11, 2003; Illinois | HAROLD PSALMS and RONALD X. FORD, JR. | 100 cases; 1,000,000 cigarettes |
| 32 | On or about March 7, 2003; Illinois | HAROLD PSALMS and RONALD X. FORD, JR. | 225 cases; 2,250,000 cigarettes |
| 33 | On or about March 18, 2003; Illinois | HAROLD PSALMS and RONALD X. FORD, JR. | 200 cases; 2,000,000 cigarettes |

| Count | Date(s) and state(s) | Defendant(s) | Number of Cases and Cigarettes |
|---|---|---|---|
| 34 | On or about March 27, 2003; Illinois | HAROLD PSALMS, MOHAMED ABDELMEGID AREF, RONALD X. FORD, JR., MUSTAPHA C. KECHTBAN, STEVE C. TAKLA and EDWARD GENE SAAD | 100 cases; 1,000,000 cigarettes |
| 35 | On or about May 8, 2003; Illinois | HAROLD PSALMS and RONALD X. FORD, JR. | 100 cases; 1,000,000 cigarettes |
| 36 | From on or about June 3, 2003 to June 17, 2003; Illinois | HAROLD PSALMS, MOHAMED ABDELMEGID AREF, RONALD X. FORD, JR. and MUSTAPHA C. KECHTBAN | 898 cases (60 carton); 10,776,000 cigarettes |
| 37 | On or about August 6, 2003; Illinois | HAROLD PSALMS, RONALD X. FORD, JR., LLOYD J. THAMES and NARESH JOITAREM PATEL | 124 cases; 1,240,000 cigarettes |
| 38 | On or about January 14, 2004; Illinois | HAROLD PSALMS, RONALD X. FORD, JR., MOHAMED ABDELMEGID AREF and AJAYKUMAR RATILAL JOSHI | 150 cases; 1,500,000 cigarettes |

| Count | Date(s) and state(s) | Defendant(s) | Number of Cases and Cigarettes |
|---|---|---|---|
| 39 | On or about February 10, 2004; Illinois | HAROLD PSALMS, RONALD X. FORD, JR. and MOHAMED ABDELMEGID AREF | 20 cases; 200,000 cigarettes |
| 40 | On or about February 24, 2004; Illinois | HAROLD PSALMS, RONALD X. FORD, JR. and MOHAMED ABDELMEGID AREF | 20 cases; 200,000 cigarettes |
| 41 | On or about March 10, 2004; Pennsylvania | HAROLD PSALMS, RONALD X. FORD, JR. and WALID M. HASAN | 40 cases; 400,000 cigarettes |
| 42 | On or about May 20, 2004; Illinois | HAROLD PSALMS, RONALD X. FORD, JR. and MOHAMED ABDELMEGID AREF | 100 cases; 1,000,000 cigarettes |
| 43 | On or about August 27, 2004; Illinois | HAROLD PSALMS, RONALD X. FORD, JR. and MOHAMED ABDELMEGID AREF | 500 cases; 5,000,000 cigarettes |
| 44 | On or about October 1, 2004; Illinois | HAROLD PSALMS and PETER Y. NORFLEET III | 200 cases; 2,000,000 cigarettes |

In violation of Title 18, United States Code, Sections 2342(a) and 2.

## COUNT FORTY FIVE

### (Conspiracy to Launder Monetary Instruments)

1.     The allegations set forth in the Introduction of this Indictment and in the Overt Acts alleged in Count One are re-alleged and incorporated as if fully set out herein.

2.     Beginning in or about April 2003 and continuing through in or about July 2003, in the District of New Jersey, the Northern District of Illinois, the Central District of California and elsewhere, the defendants,

### HAROLD PSALMS
### and
### MOHAMED ABDELMEGID AREF

did knowingly and willfully conspire and agree with each other, with other unindicted co-conspirators and with others both known and unknown to the grand jury, to commit an offense against the United States, that is they conspired to:

(1)     conduct financial transactions which involved the proceeds of specified unlawful activity, specifically, trafficking in contraband cigarettes, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to (1) conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity and (2) avoid a transaction reporting requirement under federal law, contrary to Title 18, United States Code, Sections 1956(a)(1)(B)(i) and (ii);

and

64

(2)     conduct financial transactions, specifically the transfer, delivery, and other disposition of

United States currency represented by a law enforcement officer to be the proceeds of

specified unlawful activity, that is the distribution of narcotics, knowing that the

transactions were designed in whole and in part (a) to conceal or disguise the nature,

location, source, ownership, and control of property believed to be the proceeds of

specified unlawful activity, and (b) to avoid a transaction reporting requirement under

State or Federal law, contrary to Title 18, United States Code, Section 1956(a)(3).

All in violation of Title 18, United States Code, Section 1956(h).

65

## COUNTS FORTY SIX through FIFTY
### (Laundering Monetary Instruments)

1.      The allegations set forth in the Introduction of this Indictment and in the Overt

Acts alleged in Count One are re-alleged and incorporated as if fully set out herein.

2.      On or about the dates listed below, in the District of New Jersey, the Northern

District of Illinois, the Central District of California, and elsewhere, the defendants set forth

below, knowing that the property involved in the financial transactions represented the proceeds

of some form of unlawful activity, and knowing that the transactions were designed in whole and

in part to (1) conceal and disguise the nature, location, source, ownership, and control of the

proceeds of specified unlawful activity, and (2) avoid a transaction reporting requirement under

Federal law, did knowingly and willfully conduct, attempt to conduct and cause the conducting

of the financial transactions affecting interstate and foreign commerce, as set forth below, which

involved the proceeds of specified unlawful activity, namely, trafficking in contraband cigarettes

contrary to Title 18, United States Code, Section 2342:

| Count | Date | Defendant(s) | Amount of financial transaction(s) |
|-------|------|--------------|-----------------------------------|
| 46 | Between on or about April 1, 2003 and on or about April 18, 2003 | **HAROLD PSALMS** | $57,600 |
| 47 | From on or about April 8, 2003 To on or about April 19, 2003 | **HAROLD PSALMS** | $70,000 |

| Count | Date | Defendant(s) | Amount of financial transaction(s) |
|-------|------|--------------|-----------------------------------|
| 48 | From on or about May 12, 2003 to on or about May 15, 2003 | **HAROLD PSALMS** | $47,000 |
| 49 | On or about May 20, 2003 | **HAROLD PSALMS** | $27,000 |
| 50 | On or about May 28, 2003 | **HAROLD PSALMS** | $5,500 |

In violation of Title 18, United States Code, Sections 1956(a)(1) and 2.

## COUNTS FIFTY ONE through FIFTY TWO
### (Laundering Monetary Instruments)

1.      The allegations set forth in the Introduction of this Indictment and in the Overt

Acts alleged in Count One are re-alleged and incorporated as if fully set out herein.

2.      On or about the dates listed below, in the District of New Jersey, the Northern

District of Illinois, and elsewhere, the defendants set forth below, with the intent (a) to conceal

and disguise the nature, location, source, ownership, and control of property believed to be the

proceeds of specified unlawful activity, and (b) to avoid a transaction reporting requirement

under Federal law, did knowingly and willfully conduct and attempt to conduct financial

transactions, specifically the transfer, delivery, and other disposition of United States currency, in

the amounts set forth below, represented by a law enforcement officer to be the proceeds of

specified unlawful activity, that is, the distribution of narcotics contrary to Title 21, United States

Code, Section 841(a):

| Count | Date | Defendant(s) | Amount of financial transaction(s) |
|-------|------|--------------|-----------------------------------|
| 51 | From on or about June 10, 2003 to on or about June 25, 2003 | **HAROLD PSALMS** **and** **MOHAMED ABDELMEGID AREF** | $ 62,725 |
| 52 | From on or about June 10, 2003 to on or about July 8, 2003 | **HAROLD PSALMS** **and** **MOHAMED ABDELMEGID AREF** | $ 57,500 |

In violation of Title 18, United States Code, Sections 1956(a)(3) and 2.

## THIRD FORFEITURE ALLEGATION

1.  The allegations contained in Counts 45 through 52 are incorporated as if set forth at length herein for the purposes of noticing forfeiture, pursuant to Title 18, United States Code, Section 982(a)(1).

2.  Pursuant to Title 18, United States Code, Section 982(a)(1), each defendant who is convicted of an offense set forth in Counts 45 through 52 of this Indictment shall forfeit to the United States the following property:

    a.  All right, title, and interest in any and all property involved in each offense in violation of Title 18, United States Code, Sections 1956, for which the defendant is convicted, and all property traceable to such property, including the following:

        (i)  all money and other property that was the subject of each transaction, transportation, transmission, and transfer in violation of Title 18, United States Code, Section 1956;

        (ii)  all commission, fees and other property constituting proceeds obtained as a result of those violations; and

        (iii)  all property used in any manner and part to commit and to facilitate the commission of those violations.

    b.  A money judgment equal to the total amount of money involved in any offense set forth in Counts 45 through 52 for which each defendant is convicted.  If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in the offense.

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), each defendant shall forfeit substitute property, up to the value of the amount described in paragraph 2 above, if, by any act and omission of any defendant, the property described in paragraph 2, or any portion there of:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred, sold to or deposited with a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty.

Pursuant to Title 18, United States Code, Section 982(a)(1).

## COUNT FIFTY THREE

### (Conspiracy to Distribute Narcotics)

1.    The allegations set forth in the Introduction of this Indictment and in the Overt

Acts alleged in Count One are re-alleged and incorporated as if fully set out herein.

2.    From in or about August 2003 to on or about October 10, 2003, in the District of

New Jersey, the Northern District of Illinois and elsewhere, defendants

**HAROLD PSALMS,**
**DAVID WASHINGTON,**
**LESTER V. EDDINGS**
**and**
**FREDRICK LYDELL STEVENSON**

did knowingly and intentionally conspire and agree with each other and with others to distribute

and to possess with intent to distribute a quantity of 3,4-methylenedioxymethamphetamine

("MDMA"), namely ecstasy, a Schedule I narcotic drug controlled substance, contrary to Title

21, United States Code, Sections 841(a) (1) and (b)(1)(C).

In violation of Title 21, United States Code, Section 846.

## COUNT FIFTY FOUR
### (Distribution of Narcotics)

1.      The allegations set forth in the Introduction of this Indictment and in the Overt

Acts alleged in Count One are re-alleged and incorporated as if fully set out herein.

2.      On or about October 10, 2003, in the District of New Jersey, the Northern District

of Illinois and elsewhere, defendants

**HAROLD PSALMS,**

**DAVID WASHINGTON,**

**LESTER V. EDDINGS**

**and**

**FREDRICK LYDELL STEVENSON**

did knowingly and intentionally distribute and possess with intent to distribute a quantity of 3,4-

methylenedioxymethamphetamine ("MDMA"), namely ecstasy, a Schedule I narcotic drug

controlled substance.

In violation of Title 21, United States Code, Sections 841(a) (1) and (b)(1)(C) and Title

18, United States Code, Section 2.

## COUNT FIFTY FIVE

### (Conspiracy to Distribute Narcotics)

1.      The allegations set forth in the Introduction of this Indictment and in the Overt

Acts alleged in Count One are re-alleged and incorporated as if fully set out herein.

2.      From in or about November 2003 to on or about February 12, 2004, in the District

of New Jersey, the Northern District of Illinois and elsewhere, defendants

**HAROLD PSALMS,**

**GIOVANNI L. DERISI**

**and**

**ANDREA V. CODISPOTI**

did knowingly and intentionally conspire and agree with each other and with others to distribute

and to possess with intent to distribute a quantity of 3,4-methylenedioxymethamphetamine

("MDMA"), namely ecstasy, a Schedule I narcotic drug controlled substance, contrary to Title

21, United States Code, Sections 841(a) (1) and (b)(1)(C).

In violation of Title 21, United States Code, Section 846.

74

## COUNT FIFTY SIX

### (Distribution of Narcotics)

1.    The allegations set forth in the Introduction of this Indictment and in the Overt

Acts alleged in Count One are re-alleged and incorporated as if fully set out herein.

2.    On or about February 12, 2004, in the District of New Jersey, the Northern

District of Illinois and elsewhere, defendants

### HAROLD PSALMS,
### GIOVANNI L. DERISI
### and
### ANDREA V. CODISPOTI

did knowingly and intentionally distribute and possess with intent to distribute a quantity of 3,4-

methylenedioxymethamphetamine ("MDMA"), namely ecstasy, a Schedule I narcotic drug

controlled substance.

In violation of Title 21, United States Code, Sections 841(a) (1) and (b)(1)(C) and Title

18, United States Code, Section 2.

## COUNT FIFTY SEVEN
### (Distribution of Narcotics)

1.    The allegations set forth in the Introduction of this Indictment and in the Overt

Acts alleged in Count One are re-alleged and incorporated as if fully set out herein.

2.    On or about April 29, 2004, in the District of New Jersey, the Northern District of

Illinois and elsewhere, defendants

### GIOVANNI L. DERISI
### and
### ANDREA V. CODISPOTI

did knowingly and intentionally distribute and possess with intent to distribute a quantity of 3,4-

methylenedioxymethamphetamine ("MDMA"), namely ecstasy, a Schedule I narcotic drug

controlled substance.

In violation of Title 21, United States Code, Sections 841(a) (1) and (b)(1)(C) and Title

18, United States Code, Section 2.

## FOURTH FORFEITURE ALLEGATION

1.    The allegations contained in Counts 53 through 57 are incorporated as if set forth

at length herein for the purposes of noticing forfeiture, pursuant to Title 18, United States Code,

Section 853.

2.    Each defendant who is convicted of an offense set forth in Counts 53 through 57

of this Indictment shall forfeit to the United States pursuant to 21 U.S.C. § 853, any and all

property constituting and derived from any proceeds the defendants obtained directly and

indirectly as a result of the said violations and any and all property used and intended to be used

in any manner and part to commit and to facilitate the commission of the violations alleged in

Counts 53 through 57 of this Indictment, including but not limited to the following:

a.  MONEY JUDGMENT

A sum of money equal to $500,000 in United States currency, representing the amount of

proceeds obtained as a result of the conspiracy to distribute quantities of 3,4-

methylenedioxymethamphetamine ("MDMA"), namely ecstasy, in violation of Title 21, United

States Code, Section 846 and the distribution of quantities of MDMA, namely ecstasy, in

violation of Title 21, United States Code, Section 841(a), and Title 18, United States Code,

Section 2, for which the defendants are jointly and severally liable.

3.    If any of the above-described forfeitable property, as a result of any act or

omission of the defendants:

(1)  cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property.

Pursuant to Title 21, United States Code, Section 853.

A TRUE BILL

FOREPERSON

CHRISTOPHER J. CHRISTIE
United States Attorney

CASE NUMBER:

**United States District Court**
**District of New Jersey**

UNITED STATES OF AMERICA

v.

HAROLD PSALMS, a/k/a "Harold Washington," a/k/a "Hal,"
MOHAMED ABDELMEGID AREF,
RONALD X. FORD, JR.,
MUSTAPHA C. KECHTBAN,
STEVE C. TAKLA,
EDWARD GENE SAAD, a/k/a "Ed,"
DAVID WASHINGTON,
LESTER V. EDDINGS,
FREDRICK LYDELL STEVENSON, a/k/a "Fred Johnson,"
GIOVANNI L. DERISI, a/k/a "John,"
ANDREA V. CODISPOTI,
LLOYD J. THAMES,
NARESH JOITAREM PATEL, a/k/a "Nicky,"
AJAYKUMAR RANILAL JOSHI, a/k/a "Ajay,"
WALID M. HASAN,
PETER Y. NORFLEET III

**INDICTMENT FOR**

18 U.S.C. § 1962(d)
18 U.S.C. § 371
18 U.S.C. § 545
18 U.S.C. § 1956
18 U.S.C. § 2320
18 U.S.C. § 2342
18 U.S.C. § 2
18 U.S.C. § 982
18 U.S.C. § 1963
21 U.S.C. § 841
21 U.S.C. § 846
21 U.S.C. § 853

A True Bill.

_[signature]_

Foreperson

CHRISTOPHER J. CHRISTIE
U.S. ATTORNEY
NEWARK, NEW JERSEY

STEPHEN J. TAYLOR
ASSISTANT U.S. ATTORNEY
973-645-2824

USA-48AD 8 (Ed. 1/97)

AO 245 B (Rev. 12/03) Sheet 1 - Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT
## District of New Jersey

UNITED STATES OF AMERICA

    v.                                             Case Number    Cr. 05-416 (JBS)

DAVID WASHINGTON

    Defendant.

### JUDGMENT IN A CRIMINAL CASE
#### (For Offenses Committed On or After November 1, 1987)

The defendant, DAVID WASHINGTON, was represented by Patrick J. Egan, Esq.

On motion of the United States the court has dismissed count(s) 54.

The defendant pled guilty to count(s) 53 of the Indictment on 2/17/06. Accordingly, the court has adjudicated that the defendant is guilty of the following offense(s):

| Title & Section | Nature of Offense | Date of Offense | Count Number(s) |
|---|---|---|---|
| 21 USC 846 | Conspiracy to Distribute Narcotics | 8/03 - 10/10/03 | 53 |

As pronounced on 11/17/06, the defendant is sentenced as provided in pages 2 through 4 of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is ordered that the defendant shall pay to the United States a special assessment of $100.00, for count(s) 53, which shall be due immediately. Said special assessment shall be made payable to the Clerk, U.S. District Court.

It is further ordered that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States Attorney of any material change in the defendant's economic circumstances.

Signed this the 17th day of November, 2006.


JEROME B. SIMANDLE
United States District Judge

60192

AO 245 B (Rev. 12/03) Sheet 4 - Probation

Defendant:    DAVID WASHINGTON
Case Number:  Cr. 05-416 (JBS)

## PROBATION

The defendant is hereby placed on probation for a term of 3 years.

While on probation, the defendant shall comply with the standard conditions that have been adopted by this court (on the next page).

The defendant shall submit to one drug test within 15 days of commencement of probation and at least two tests thereafter as determined by the probation officer.

If this judgment imposes a fine, special assessment, costs or restitution obligation, it shall be a condition of probation that the defendant pay any such fine, assessment, costs and restitution and shall comply with the following special conditions:

The defendant is to be confined to his residence for a period of 6 months commencing at the direction of the U.S. Probation Office. The defendant shall be required to be at this residence at all times except for approved absences for gainful employment, community service, religious services, medical care, educational or training programs and at other such times as may be specifically authorized by the U.S. Probation Office. The defendant shall wear an electronic monitoring device and follow electronic monitoring procedures. The defendant shall permit the probation officer access to the residence at all times and maintain a telephone at the residence without any custom services or portable, cordless equipment. The defendant shall comply with any other specific conditions of home confinement as the probation officer requires. The defendant shall pay the costs of electronic monitoring, specifically $3.26 per day.

The defendant shall contribute 300 hours of community service work over a period of 3 years or less from the date probation is granted. Such service shall be without compensation, with the specific work placement to be approved by the U.S. Probation Office.

The defendant shall refrain from the illegal possession and/or use of drugs and shall submit to urinalysis or other forms of testing to ensure compliance. It is further ordered that the defendant shall submit to drug treatment, on an outpatient or inpatient basis, as directed by the U.S. Probation Office. The defendant shall abide by the rules of any program and shall remain in treatment until satisfactorily discharged with the approval of the U.S. Probation Office.

The defendant shall provide the U.S. Probation Office with full disclosure of his financial records to include yearly income tax returns upon the request of the U.S. Probation Office. The defendant shall cooperate with the probation officer in the investigation of his financial dealings and shall provide truthful monthly statements of his income.

The defendant is prohibited from incurring any new credit charges or opening additional lines of credit without the approval of the probation officer, unless the defendant is in compliance with a payment schedule for any fine obligation. The defendant shall not encumber or liquidate interest in any assets unless it is in direct service of the fine obligation or otherwise has the express approval of the Court.

The defendant shall cooperate in the collection of DNA as directed by the probation officer.

AO 245 B (Rev. 12/03) Sheet 4a - Probation

Judgment – Page 3 of 4

Defendant:    **DAVID WASHINGTON**
Case Number:    Cr. 05-416 (JBS)

## STANDARD CONDITIONS OF PROBATION

While the defendant is on probation pursuant to this Judgment:

1)    The defendant shall not commit another federal, state, or local crime during the term of supervision.

2)    The defendant shall not illegally possess a controlled substance.

3)    If convicted of a felony offense, the defendant shall not possess a firearm or destructive device.

4)    The defendant shall not leave the judicial district without the permission of the court or probation officer.

5)    The defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month.

6)    The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.

7)    The defendant shall support his or her dependents and meet other family responsibilities.

8)    The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons.

9)    The defendant shall notify the probation officer within seventy-two hours of any change in residence or employment.

10)    The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute or administer any narcotic or other controlled substance, or any paraphernalia related to such substances.

11)    The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered.

12)    The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer.

13)    The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer.

14)    The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.

15)    The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court.

16)    As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

---

*For Official Use Only - - - U.S. Probation Office*

Upon a finding of a violation of probation or supervised release, I understand that the Court may (1) revoke supervision or (2) extend the term of supervision and/or modify the conditions of supervision.

These conditions have been read to me. I fully understand the conditions, and have been provided a copy of them.

You shall carry out all rules, in addition to the above, as prescribed by the Chief U.S. Probation Officer, or any of his associate Probation Officers.

(Signed) _____
                                      Defendant                                      Date

_____
        U.S. Probation Officer/Designated Witness                      Date

AO 245 B (Rev. 12/03) Sheet 5 - Fine

Defendant:      DAVID WASHINGTON
Case Number:    Cr. 05-416 (JBS)

## FINE

The defendant shall pay a fine of $10,000.00.

This fine, plus any interest pursuant to 18 U.S.C. § 3612(f)(1), is due immediately.

If the fine is not paid, the court may sentence the defendant to any sentence which might have been originally imposed. See 18 U.S.C. § 3614.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) community restitution, (6) fine interest, (7) penalties, and (8) costs, including cost of prosecution and court costs.